WHITE v. WEINHOLD ET AL.

[No. 19,182. Filed February 14, 1961. Rehearing denied March 24, 1961. Transfer denied January 30, 1962.]

*Oscar Strom, Guy Williams,* and *Strom & Whitted,* all of Gary, for appellant.

*Albert Anhold* and *Mario B. Tomsich,* both of Gary, for appellees.

BIERLY, J.—The decedent, Martin Weinhold, died testate, on January 3, 1956, and his will devising the real estate involved in this action was duly admitted to probate. The appellant, George Paul White, brother of the decedent, filed a complaint entitled "Objection to Probate of Will." However, said complaint stated no facts as objections to the probate of said will. Rather, the complaint alleged facts to the effect that appellant

had purchased the real estate from the former owners thereof; that he executed a deed conveying said real estate to appellee, George Feist, in connection to a business transaction between them, reserving a life estate in appellant; that difference arose between them and upon a settlement thereof, appellant required said appellee, together with his wife, to execute a deed to decedent and that, simultaneously therewith, decedent executed a declaration that he was acting as trustee for appellant; that appellees, Susan Weinhold, widow of decedent, and Daniel Weinhold were made "beneficiaries" of said real estate by decedent's will; that on numerous occasions appellant had requested and demanded that decedent convey said real estate to him but decedent refused to do so. Prayer by appellant was for cancellation of the deeds; that a trust be declared; that a commissioner be appointed to make conveyance to appellant; that appellant's title be quieted against appellees; that the appellees be restrained from executing any deed or "other incumbrances" affecting the title to the real estate.

Appellees, except Feist and Feist, filed answer under the rules and an affirmative answer admitting the trust relationship at the time decedent took title to the real estate but that subsequently appellant and decedent, by way of decedent's acceptance of an offer made by letter by appellant, made a contract of purchase and sale, and decedent, at the time of his death, had paid on the contract the sum of $2950.00, leaving an unpaid ballance of $1050.00, for which appellant had a lien on the real estate. Prayer that title be quieted. Issues were appropriately framed on the pleadings.

The trial was to the court. Appellant introduced his evidence and rested. At the conclusion of appellees' evidence, appellant moved for a finding on the ground that

appellees' plea of a contract had not been sustained. Appellees thereupon joined in the motion. The court then announced a finding for the "Defendant" and a lien of $1050.00 and a life estate, for the plaintiff-appellant, in the property. No request or offer to submit or introduce further evidence was made by the appellant.

It appears from the record that at the time decedent received the warranty deed from appellees, George Feist and Margaret Feist, his wife, conveying the real estate to the decedent, the latter signed a declaration, written or typed in the English language, in which it was stated, in part, that neither appellant nor appellee, George Feist, was indebted to him in any amount; that "I am acting as trustee for my said brother;" that decedent would keep the title in his name and make a Warranty Deed to appellant or his designee "upon his (appellant's) demand for me to do so." It was stipulated by the parties that on the date of the deed and declaration (December 7, 1946) the decedent "was *then* holding the real estate described, in trust for petitioner, George Paul White." The parties further stipulated that "Plaintiffs' and Defendants' Exhibits numbered 4, 5 and 6 . . . be each and all admitted into evidence without objection." Said exhibits purport to be letters, written in the German language, from appellant to the decedent. Apparently, it was upon these letters, dated respectively, May 25, 1951, August 21, 1951 and February 23, 1952, and some records of payments claimed to have been made by decedent to appellant, together with testimony of appellee, Susan Weinhold, as to improvements which decedent had made on the real estate and taxes he had paid thereon, that the Court based its findings that decedent died "the owner under contract or purchase from plaintiff of the real estate set out in the complaint," on which there was due an "unpaid

balance of $1050.00 of the purchase price," which is a valid purchase money lien, and that "plaintiff holds a valid life estate in the said real estate."

Appellant's argument, in parts, is contradictory and considers the evidence favorable to himself. It contains much argument that should have been addressed to the trial court. For instance, the argument refers to matters which the appellant contends show fraud on the part of the "heirs and personal representatives" of the decedent. But we find nothing in the record which shows any issue or contention of fraud in the trial court. It is not our prerogative to draw an inference of fraud. Such inference is for the trial court under appropriate issues.

Appellant asserts that there is insufficient evidence to sustain the court's decision and that the decision is contrary to law. This assertion is mainly predicated by appellant upon the grounds that the inadequacy of the consideration for the purchase of the real estate by decedent shows fraud on the part of the heirs and personal representatives of decedent (we have already disposed of this contention) and that the letters referred to above "are not of probative value to support appellees' affirmative answer," because they are written in the German language and there is no translation of them in the record.

Appellant says that the fact that the letters were admitted into evidence, without objection, under the stipulation, does not "give them probative value." Appellees say in their brief that a translation was made by one Andy Binder and that "appellant and his attorneys compared said English translations with appellant's said German letters, and that they were satisfied with the translations and accepted them;" that the court then dismissed said Binder as a witness.

Appellees attach as a part of their brief copies of affidavits of Albert Anhold and Mario M. Tomsich, attorneys for appellees, to the effect as quoted above; affidavit of Andy Binder that he made the translations and setting forth what he averred as the English translation of the three letters; and the affidavit of the trial judge to the effect that he had read the two affidavits just mentioned and that the facts "contained therein" are true. These affidavits are not a part of the record and it requires no citation of authority to establish that we are unable to consider them as evidence of the contents of the letters.

Appellant cites authorities to the asserted effect that the introduction without objection, of evidence having no probative value gains no such value merely by being introduced. However, this does not solve our present problem. Here the record shows that the letters were not only permitted to go into evidence by appellant without objection, but they were exhibits offered by appellant, himself. As noted above, the exhibits, under the stipulation, were exhibits of the *appellant and* appellees.

It may be fair to say that the fact that the letters were put into evidence by appellant would not give them any more probative value than they would have possessed if put in by appellees only. But we are unable to persuade ourselves that the cause of justice can be assisted by holding that appellant could put exhibits in the form of letters in a foreign language into evidence and take his chances on a favorable result, and then, upon an adverse conclusion, sucessfully urge on appeal that the letters were without probative value. The only basis upon which appellant asserts a lack of probative value in the letters is that the record does not show the translation thereof into the English language. The record shows that the letters were writ-

ten by the appellant himself in the German language. He knew what was stated in them and he put them in evidence jointly with the appellees. We must indulge every presumption in favor of the decision of the trial court and the appellant must establish error by the record. Under the circumstances here apparent, we cannot presume that the court was not apprised of the contents of the letters, even though the record may not disclose a translation of the same.

Evidence which is intrinsically destitute of probative quality acquires no weight by reason of its introduction. An unexplained deed, for instance, with no name of the grantee and no signature of the grantor would be intrinsically without probative value to evidence a conveyance of land. There could be no presumption which could supply the necessary probative value. But the letters here involved are not thus intrinsically without probative value. They can be void of probative value only if they could not be translated or deciphered. We cannot presume, of course, that the trial judge possessed any knowledge of the German language or that he could translate the contents of said letters. But, since it is possible that said letters could be translated or deciphered, we cannot presume, in order to sustain appellant's contention, that the court was not in some manner advised of the exact contents and meaning of the letters. It cannot be supposed that appellant and appellees joined in the introduction of these letters pursuant to their stipulation without knowledge of their contents or with the intention of later attacking the decision of the court on the ground of the asserted lack of probative value. Under the circumstances here appearing, it certainly was the duty of the parties to make manifest to the trial judge the contents of the letters and if they failed to do so, neither would be in a position

to now, on appeal, urge an evidentiary insufficiency thereof.

We now turn to and consider the remaining specifications of error contained in appellant's motion for a new trial.

Under Specification III A, appellant asserts error of the court in "sustaining the objection" of appellees to a question put by appellant on direct examination to its witness, Paul White. The question, in substance, was whether the witness was the owner of 160 acres of land in Porter County on February 27, 1942. The witness answered "Yes." The appellees thereafter objected and the court sustained the objection. Appellant made no offer to prove. It is clear that this specification poses no error. The assignment must be error in the admission of the evidence, not in the sustaining of the objection. The question was answered and the motion for a new trial discloses no motion to strike the answer. As a consequence, no harm resulted to appellant by the sustaining of the objection.

Appellant seeks to argue that by its ruling the court "disqualified" the witness, the appellant, as a "competent" witness and reference is made in the argument to other questions, objections and rulings of the court, and to the examination of another witness. But none of these matters appear in the motion for new trial and we cannot determine such questions unless properly presented in the new trial motion.

By Specification III B appellant charges error in the court in overruling the "objection" of appellant to appellees' Exhibit One, purporting to be a record book of the decedent. Again, we must observe that properly the error must be predicated on the admission of the evidence or the exclusion thereof, as the case may be, and not on the overruling or sus-

taining of the objection. However, it appears from the new trial motion that a book, referred to as a "record" book of the decedent was found in a trunk after his demise. The book was offered in evidence and appellant objected to it on the ground that it was hearsay in that it set forth information which, *"if written by decedent,"* was written out of the sight and hearing of the witness, and on the further ground that it was "self-serving." The court said, "we don't know what is in there" and attorney for appellant said: "I do, that's why I want it out of the evidence." The court thereupon overruled the objection. It is clear that no error is shown. Unless we advert to the record and read the whole exhibit, we do not know whether there was any writing in the book; who wrote it, if there was such writing; what bearing the writing, if any, had with relation to the issues in the cause; whether some of the writing may be admissible, while some may not be admissible. In other words, the objection was to the book, as such, and not to any particular writing or other information or data contained therein. It would seem that appellant had more properly presented the question if he had objected to all or part of the writing, information or data, if any, contained in the book, or had moved to strike out and reject the objectionable parts of any writing or data in the book. For all that appears from this specification of the new trial motion, we are at a loss to comprehend or understand how the court, under such circumstances, could have intelligently ruled other than he did.

Specification III C charges error in the court in "curtailing" appellant's cross examination of the widow of the decedent as to whether money was put in a lock-box of the widow and decedent. It is clear that said specification, as worded, presents no

question. Further, the question asked was, in substance, whether the witness was present when "the money" was put in the lock-box. There was no evidence, at that time, that any money was ever put into the box. The question, therefore, assumed a fact not in evidence and the objection by appellees upon that ground was properly sustained by the court.

Specifications III, D, E, F, G, H, I, J and K of appellant's motion for a new trial present no question. Appellant, in his argument, groups them all together and says that such specifications are "being directed to the entry, content and form of the decision and judgment" under "Error of Law occurring at the trial." Of course, the "entry, content and form" of a "decision and judgment" are not errors of law occurring at the trial. *Altmeyer* v. *Norris* (1954), 124 Ind. App. 470, 119 N. E. 2d 31. They represent the conclusions arrived at by the court after the trial is over. All of said specifications undertook to charge error in the finding, decision and determination of the court predicated upon appellant's theory of what the evidence established and that the court adjudicated matters outside the issues in the case. Appellant utilized none of the proper procedures for correction of the finding and decision in the respects deemed erroneous.

Specifications IV, A, B, C, D, E and F of appellant's motion for a new trial undertake to charge error as "Irregularity in the proceedings of the court and the prevailing party and in the order of the court after completion of the evidence at the trial and an abuse of discretion by which the plaintiff was prevented from having a fair trial." Under Specification IV-A, the charge is made that the court "made blanket adjudications under various subjects (that) are not pertinent to the issues raised by the pleadings" and

a copy of the court's finding is set out. Specification IV-B, says that said finding was prepared by appellees' counsel to the great "harm and prejudice" of appellant. Specification IV-C avers that by its finding the court deprived appellant of his property without due process of law because there "was no issue and no legal controversy" upon which the decision "could have been founded." Specification IV-D alleges that by its finding the court, contrary to the provisions of the Constitution of the United States and the State of Indiana, delegated to the executors of the estate the discretion of selling and disposing of appellant's real estate notwithstanding the issues created by the pleadings. Specification IV-E asserts that the court adjudicated beyond the scope of the issues, and Specification IV-F contains a long argument that the judge was without authority to sit as a judge in "an adverse equity proceeding quieting title." It is clear that neither of said specifications charge any known ground for a new trial. They amount to nothing more than an attempted challenge of the correctness of the finding of the court. None of them set forth any "irregularity in the proceedings of the court, or any order of the court, or any abuse of discretion, by which appellant was prevented from having a fair trial." See Indiana Trial and Appellate Practice, Flanagan, Wiltrout and Hamilton, Section 1812, Comment 1, Provision 1, page 379. Said Specification IV-F might have presented a question if it had been predicated upon an appropriate objection or motion of appellant, made at or preceding the trial of the cause, challenging the right of the Judge to hear and determine the cause. Appellant makes no showing that he presented any such question below and he does not argue said specification. Therefore, no question is presented thereby.

Specification V of appellant's motion for a new trial specifies accident and surprise which ordinary prudence could not have guarded against, all as set forth in the affidavits . . . attached hereto and respectively marked Exhibits A and B." It is clear that this specification presents no question. It does not specifically point out the nature of the surprise nor the facts showing what the surprise was or the facts which gave rise to the surprise. *Snodgrass* v. *Hunt* (1860), 15 Ind. 274, 275. These affidavits, as shown in appellant's brief, state that one Guy Williams has at all times been one of the attorneys for appellant; that his practice was confined to lines other than trial work; that he employed Edward Sutton to try the case; that the case was called for trial on February 14, 1957; that on that day said Sutton was in the court with his file containing papers, briefs, authorities, compilation of facts and data; that Sutton left the file in the Judge's chambers, went into the court room where the case was continued, and then left the court without the file; that the cause was set for trial on March 14, 1957; that a few days prior thereto said Sutton suffered a heart attack and became unable to be present at the trial on March 14, 1957; that said Williams, about three days before the trial, engaged one James Mason to conduct the final trial of the cause; that the lost file was not found and by reason thereof said Mason did not have full knowledge of the proceedings and the evidence introduced prior to March 14, 1957, and did not have an opportunity, by reason of the lost file, to fully prepare appellant's case; that other continuances had been obtained by appellant because of the illness of said Sutton and the Court "had indicated by his statements to counsel" that he would not entertain further continuances at appellant's request "for which reason this affiant *deemed it useless to file an affidavit for continuance"* and *"instead of so doing, this*

*affiant employed other trial counsel . . . and proceeded to trial on March 14, 1957."*

It is apparent that the affidavits do not show facts which disclose surprise or that such claimed surprise could not have been guarded against. The affidavits show that counsel took it upon himself to determine that the court would not have granted a properly requested continuance. No motion or request for continuance was made and "instead of so doing," counsel "proceeded to trial." Further, there is nothing in the affidavits to show that on a new trial the said Sutton would be able to act as counsel at the trial or that the information in the lost file would be available. In short, there is nothing in the affidavits, on the point now being considered, which shows that a new trial would properly produce a result different than the present one. Thus this Specification V presented no ground for a new trial.

Specification VI is on the ground of asserted newly discovered evidence, which appellant could not, with reasonable diligence have discovered and produced at the trial. In support thereof, appellant attaches the affidavits of counsel which were referred to in the discussion above of Specification V. The affidavits state that one Elvin Marshall would have testified in rebuttal to testimony of appellee, Susan Weinhold; that one "Nolan" would have testified in rebuttal "contrary to the evidence of the defendants" as to certain matters; and that one Ira C. Tilton "would have and will" testify as to certain designated matters. There are no affidavits of the said witnesses included or attached nor is any satisfactory reason or legal excuse given as to why the affidavits of said witnesses were not or could not be produced and filed. There is no showing that the witnesses were not available to testify at

the trial or that appellant used due diligence or made any effort to have them present at the trial. There is no showing that the evidence to be given by said witnesses was discovered since the trial and was not known to appellant at the time of the trial. There is no showing that the evidence is not privileged or incompetent; that it is worthy of credit; or that it will probably produce a different result in the cause. Further, appellant's brief discloses that the aforesaid witness, Ira C. Tilton, was present at the trial and testified twice as a witness for appellant. Without further comment, it is clear that this Specification VI of appellant's motion for a new trial wholly fails to establish or present any ground or reason for a new trial.

As an independent assignment of error, appellant assigns that the court erred in overruling his motion to reopen the case for additional evidence. The motion consisted of an affidavit by Guy Williams, one of appellant's attorneys, wherein it is shown that at the conclusion of all the evidence, the appellant moved for a "judgment" and that the appellees thereupon joined in appellant's said motion. The record discloses that the court thereupon found against appellant on his complaint and for the appellees, except Feist and Feist, on the second paragraph of their answer, and entered judgment herein above set out. The affidavit then proceeds to allege that the appellant had "considerable additional evidence" to offer in rebuttal of appellees' evidence which was "inadvertently not then available" to appellant. The affidavit then alleges that one Elvin Marshall would give testimony to rebut testimony of Susan Weinhold concerning improvements allegedly made on the property by decedents; that one "Nolan" would testify in rebuttal concerning alleged improvements put on the real estate by decedent and his wife; that one

Ira C. Tilton would give testimony as to certain specified matters; and the testimony of appellant himself "who was not recalled to the stand because he was summarily and erroneously declared incompetent as a witness" by the court, and who would testify "in opposition to the evidence adduced by the defendants." It is then alleged in the affidavit that a "great injustice will be done the plaintiff if said cause is not reopened and the plaintiff is not permitted to make his defense in rebuttal to the evidence introduced by the defendants."

It is apparent that after appellant had put in all his evidence in chief and the appellees had put in all their evidence to meet appellant's case, and on their answer to appellant's complaint, the appellant considered that the evidence was sufficient to support his position and he thereupon moved the court for judgment on the evidence before the court. The appellees, however, joined in the motion and thus, the cause was submitted to the court for finding and judgment on the submitted evidence. As stated above, appellant made no request or motion or offer to submit or introduce further evidence. The court thereupon rendered its finding and judgment on March 14, 1957, which was adverse to appellant insofar as his complaint was concerned. Appellant abided the judgment without further proceedings until April 10, 1957, on which latter mentioned date appellant filed the aforesaid affidavit and motion to set aside the judgment, reopen the cause and permit appellant to introduce evidence in rebuttal of appellees' evidence and "additional evidence."

The granting of appellant's motion was solely within the sound discretion of the trial court. *Gilbert* v. *Lusk* (1952), 123 Ind. App. 167, 189, 106 N. E. 2d 404; *Gilchrist* v. *Gilchrist* (1947), 225 Ind. 367, 374, 75 N. E. 2d 417. Here there is no showing

in the motion that the evidence and testimony referred to therein was not available at the trial or that appellant had been deprived of the opportunity to present such evidence at the trial by reason of circumstances beyond his control. There is no showing that such evidence was newly discovered and was not known to appellant at the time of the trial. The evidence or testimony referred to in the motion is shown to be only rebuttal evidence which appellant could have offered to put in at the trial at the time the court considered his motion for finding and judgment. And it does not appear from appellant's motion to open the judgment that anything was alleged therein which, if established, would have compelled a different judgment in said action. Appellant has not shown that the court abused its discretion and we find no error in the court in overruling said motion.

Appellant has failed to establish any error by the record and the conclusion of the court must be affirmed.

Affirmed.

Pfaff, P. J., Kelley and Gonas, JJ., concur.

NOTE.—Reported in 172 N. E. 2d 219.