Eudesimo ARTEAGA, Petitioner,

v.

The INDUSTRIAL COMMISSION OF the STATE of Colorado, (Ex-Officio The Unemployment Compensation Commission of Colorado); and Division of Employment, Colorado Department of Labor and Employment, Respondents.

No. 84CA0601.

Colorado Court of Appeals,
Div. III.

Jan. 31, 1985.

Rehearing Denied Feb. 28, 1985.

Certiorari Granted Aug. 19, 1985.

Colorado Rural Legal Services, Charles H. Wheeler, Margaret Gleason, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Christa D. Taylor, Asst. Atty. Gen., Denver, for respondents.

TURSI, Judge.

Petitioner, Eudesimo Arteaga, seeks review of an order of the Industrial Commission denying him unemployment compensation benefits. We set aside the order and remand to the Industrial Commission.

Petitioner entered the United States illegally in March of 1981. On April 26, 1982, he married a citizen of the United States. Petitioner was arrested by the Immigration and Naturalization Service (INS) on April 28, 1982, and requested a deportation hearing. He was released upon posting an appearance bond which contained a "no-work" rider restricting him from further employment in the United States.

On May 5, 1982, petitioner's wife filed an immediate relative petition with the INS requesting that her husband be granted resident alien status based on his marriage to a citizen. This petition was approved on June 23, 1982. In the interim, the INS struck the no-work rider from petitioner's bond on May 19, 1982, and issued him an authorization to accept employment in the United States. On May 16, 1983, petitioner was issued a permanent resident alien visa.

Petitioner filed a claim for unemployment insurance benefits on June 23, 1983. He had been employed by the same employer from May 1, 1981, to the date of his claim. After several stages of administrative consideration, the Industrial Commission ruled that the appropriate standard for determining an alien's entitlement to unemployment insurance benefits under § 8–73–107(7), C.R.S., is whether the alien is lawfully in the United States during his employment. The Commission concluded that prior to obtaining his permanent resident alien visa on May 16, 1983, petitioner was not in the country lawfully, and ordered that any wages claimant earned prior to this date could not be used as a basis for eligibility for benefits. Petitioner, however, claims that his eligibility runs from either May 19, 1982, the day his authorization to work was granted, or from June 23, 1982, the day his wife's petition was approved.

The statutory test, § 8–73–107(7)(a), C.R.S., for the disqualification of aliens from unemployment insurance benefits is substantially identical to 26 U.S.C. § 3304(a)(14)(A) (1976), and was adopted as a condition for continued federal approval

of this state's unemployment compensation laws. *See* 26 U.S.C. § 3304(a) (1976).

Section 8–73–107(7)(a) provides:

"Benefits shall not be payable on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent residence at the time such services were performed, was lawfully present for purposes of performing such services, or was permanently residing in the United States under color of law at the time such services were performed . . . ."

■ The question here is whether petitioner falls into that category of aliens "permanently residing in the United States under color of law." Since § 8–73–107(7), C.R.S., is based on federal law, federal authority interpreting the federal enactment is highly persuasive in interpreting this state statute. *See Sandefer v. Reynolds Securities, Inc.,* 44 Colo.App. 343, 618 P.2d 690 (1980).

Only one federal case has been brought to our attention which discusses the meaning of "permanently residing in the United States under color of law." That case, *Holley v. Lavine,* 553 F.2d 845 (2nd Cir. 1977), *cert. denied sub nom., Shang v. Holley,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978), involved a Canadian citizen who was in the United States illegally, but whose six children were all American citizens. The INS had informed the alien that she would not be deported at least until her children were grown.

The alien challenged a New York State Social Services Law which made aliens unlawfully residing in this country ineligible for benefits under the cooperatively operated state and federal Aid to Families with Dependent Children program. The controlling federal regulation under which the Department of Health, Education, and Welfare approved the New York State law contained the same three qualifying criteria for alien eligibility as are at issue here, including the provision concerning those persons who are "permanently residing in the United States under color of law." *See* Memorandum for the United States as Amicus Curiae by the Solicitor General in Opposition of Writ of Certiorari filed in *Shang v. Holley, supra.* The alien claimed that the New York statute was not in compliance with this federal regulation.

The *Holley* court defined the term "permanent" by referring to the term's definition in § 101(a)(31) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(31) (1976). This section provides:

"The term 'permanent' means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual in accordance with law."

The Court concluded that the alien was permanently residing in the United States under this definition because her residence in this country had been assured by the INS until her children were grown or until the government took other action.

As to the meaning of the term "under color of law" we again quote the *Holley* court:

"The phrase obviously includes actions not covered by specific authorizations of law. . . . 'Under color of law' means that which an official does by virtue of power, as well as what he does by virtue of right. The phrase encircles the law, its shadows, and penumbra. . . .

There is no more common instance of action 'under color of law' than the determination of an official charged with enforcement of the law that he, as a matter of public policy, will exercise his discretion not to enforce the letter of a statute or regulation because such enforcement would involve consequences, or inflict suffering, beyond what the authors of the law contemplated."

■ We find the reasoning in *Holley* persuasive in its definition of the phrase "permanently residing in the United States under color of law," and we apply this definition to the facts of this case. Here, petitioner was permanently residing in the

United States because he was married to a citizen of the United States, was working for a domestic company under authorization from the INS, and was in the process of applying for permanent residence, even though the INS retained the power to deport him. *See Rubio v. Employment Division*, 66 Or.App. 525, 674 P.2d 1201 (1984). Petitioner was also here under color of law because the INS was fully aware of his technically illegal presence and yet consented to it by suspending efforts to deport him and by authorizing him to work. *See Antillon v. Department of Employment Security*, 688 P.2d 455 (Utah 1984); *Papadopoulos v. Shang*, 67 A.D.2d 84, 414 N.Y. S.2d 152 (1979).

■ As to the time when petitioner became eligible for unemployment compensation benefits in Colorado, we hold that on May 19, 1982, when the no-work rider was lifted from petitioner's appearance bond and authority for him to seek employment was granted, the INS demonstrated its intention to allow petitioner to remain in the county until he obtained permanent resident alien status. Therefore, wages earned by petitioner from that date are includable in determining monetary eligibility for unemployment compensation benefits.

Accordingly, the order of the Industrial Commission is set aside and the cause is remanded for reinstatement of petitioner's claim for unemployment compensation benefits.

STERNBERG and METZGER, JJ., concur.