Jose N. VAZQUEZ, Appellant (Defendant Below),

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, David L. Adams and Paul M. Hutson, as members and as constituting the Review Board of the Indiana Employment Security Division, and Songer Construction Company, Appellees (Plaintiffs Below).

No. 2–984–A–277.

Court of Appeals of Indiana, Second District.

Dec. 30, 1985.

Blanca Bianchi de la Torre, Rivera, Schlesinger & de la Torre, East Chicago, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee Review Bd. of the Indiana Employment Sec. Div.

SULLIVAN, Judge.

Appellant, Jose N. Vazquez (Vazquez), seeks review of a decision of the Review Board of the Indiana Employment Security

Division (Review Board) affirming the referee's denial of unemployment compensation benefits.

Vazquez presents three issues, which are rephrased as follows:

(1) Whether the Review Board committed an abuse of discretion by denying Vazquez's request for leave to introduce additional evidence.

(2) Whether Vazquez is permanently residing in the United States under color of law,[1] and therefore eligible to receive unemployment compensation benefits.

(3) Whether the appeals referee erred by failing to insure that Vazquez received a complete and fair hearing.

As developed before the appeals referee, the facts show that Vazquez was laid off from his employment at Songer Construction Company and applied for unemployment compensation benefits on May 31, 1983. Although Vazquez is otherwise eligible to receive benefits, his claim was denied upon grounds that Vazquez is an "illegal alien" not entitled to accumulate wage credits for unemployment purposes.

Vazquez is a citizen of Argentina. He was admitted to the United States on February 4, 1978, as a visitor for business. This authorization was to have expired on May 3, 1978, but was periodically extended pending the processing by the Immigration and Naturalization Service (INS) of Vazquez's petition for asylum. Based upon an Arrival/Departure Record, the appeals referee found that Vazquez was first authorized to work as of August 9, 1983, and that all wage credits accumulated prior to that date were void. The Review Board adopted the referee's findings and affirmed the denial of benefits on July 12, 1984.

Vazquez asserts that the Review Board erred by denying his request to submit additional evidence. The additional evidence consists of exhibits which Vazquez sought to introduce at the hearing before the referee and later before the Review Board. The exhibits are three separate INS forms I–210, which though written almost entirely in Spanish, appear to be extensions of Vazquez's "voluntary departure date."[2] Each of the exhibits contains the phrase "Employment Authorized" stamped in bold letters in the upper right-hand corner.

Review Board contends that its refusal to consider additional evidence rests within its sound discretion and that Vazquez has failed to show that the Review Board abused its discretion.[3] In addition, Review Board argues that the exhibits were not "additional" evidence because Vazquez first attempted to introduce the exhibits at the hearing before the referee. Thus, the Review Board argues that its decision was in reality an affirmance of the referee's refusal to admit the exhibits.

Neither the Review Board nor the appeals referee made a specific finding concerning the admission of Vazquez's exhibits. We do note, however, that all documentation was offered by Vazquez at the same time. The Arrival/Departure Record was admitted but the I–210 forms were refused. We can reasonably assume, therefore, that the referee denied admission of the exhibits and premised her denial upon the fact that the exhibits were in Spanish. Though not discussed by the parties herein, 640 IAC 1–11–17 supports the referee's decision to exclude the untranslated portions of the exhibits. That section of the administrative code states:

"[n]o paper or document written in any foreign language shall be introduced in

1. Indiana Code 22–4–14–9 (Burns Code Ed. Supp.1985).

2. Vazquez was granted the option of returning to Argentina pending a determination on his petition for asylum; however, extensions of the departure date were routinely granted.

3. The Review Board may accept additional evidence pursuant to the provisions of I.C. 22–4–

17–5 (Burns Code Ed.Supp.1985) and 640 IAC 1–11–8 (1984 Ed.). *See Fruehauf Corp. v. Review Board of Ind. Employment Security Division* (1983) 4th Dist. Ind.App., 448 N.E.2d 1193; *Whirlpool Corp. v. Review Board of Ind. Employment Security Division* (1982) 2d Dist. Ind. App., 438 N.E.2d 775.

evidence unless it be accompanied by a correct English translation thereof, with satisfactory proof that such translation is a correct translation of the original." (1984 Ed.)

*Cf., White v. Weinhold* (1961) 132 Ind.App. 656, 172 N.E.2d 219, 223, (stating that a foreign language exhibit is void of probative value only if it cannot be translated or deciphered and not merely because the exhibit is introduced without an accompanying translation).

 Because Vazquez was unrepresented by counsel, the referee was under a special duty to insure that Vazquez's interests were protected, and the case fully presented. *Russell v. Review Board of Ind. Employment Security Division* (1981) 3d Dist. Ind.App., 415 N.E.2d 774, 777. 640 IAC 1–11–3 (1984 Ed.). Vazquez did not present a translation of the exhibits and was not informed that the translation was crucial to the admission of the exhibits. In fact, there was no explicit finding with respect to the exhibits' admissibility.

 Nevertheless, the portion of the exhibits indicating that Vazquez was authorized to work was written in English, required *no* translation and therefore should have been considered by the referee. The stamped authorization corroborated Vazquez's unrefuted testimony that he received permission to work from INS shortly after he filed the petition for asylum and that this permission was routinely extended thereafter.

The Review Board argues that possessing a work permit is insufficient to bring Vazquez within the provisions of I.C. 22–4–14–9, which provides, in pertinent part:

"For weeks of unemployment occurring subsequent to December 31, 1977, benefits may not be paid on the basis of services performed by an alien unless the alien is an individual who has been lawfully admitted for permanent residence or *otherwise is permanently residing in the United States under color of law* (including an alien who is lawfully present in the United States as a result of the application of the provisions of section 203(a)(7) [8 U.S.C. 1153(a)(7)] or section 212(d)(5) [8 U.S.C. 1182(d)(5)] of the Immigration and Nationalization Act)." (Emphasis supplied.)

It is the construction of the underscored language that is at issue in this appeal.

The terms "permanent" and "residing" or "residence" are included in 8 U.S.C. § 1101, the definitional section of the Aliens and Nationality Act. A "permanent" relationship is one of "continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law." 8 U.S.C. § 1101(a)(31). As defined, the term "resi-dence" requires no particular intent, merely that it constitute the person's "principal, actual dwelling place." 8 U.S.C. § 1101(a)(33). There appears to be no quarrel with Vazquez's assertion that he is presently, permanently residing in the country in accordance with the definitions in 8 U.S.C. § 1101. The disagreement centers upon whether Vazquez resides here "under color of law."

Upon cross-examination by the appeals referee on behalf of Vazquez, the claims deputy testified as follows:

"A. ... but as far as the state the wages that he's earned during that time I can not use for unemployment purposes until he gets a green card.

Q. He was paid unemployment compensation in October of '80, that thing is dated what? You was supposed to have left the country according to that in in [sic] May. What is it May?

A. Okay, back then we weren't as strict on this. They've come out with new laws now. We have to have a green card. I have to have that before I can pay." Record at 33.

Apparently, because Vazquez did not have a "green card," the deputy concluded that

Vazquez was residing in the United States illegally and therefore not eligible to accumulate wage credits. The appeals referee adopted that conclusion, as did the Review Board. Nowhere in the record, however, is there a description or definition of a "green card," or what status is conferred upon someone issued a "green card," or why that particular status was deemed critical to the question of whether Vazquez is permanently residing in the United States *under color of law.*

The phrase "under color of law" is not statutorily defined, but has been construed to include

"actions not covered by specific authorizations of law. It embraces not only situations within the body of the law, but also others enfolded by a colorable imitation. 'Under color of law' means that which an official does by virtue of power, as well as what he does by virtue of right." *Holley v. Lavine* (2d Cir.1977) 553 F.2d 845, 849, *cert. denied sub nom Shang v. Holley* (1978) 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545.

The court in *Holley* determined that an alien was residing in the United States "under color of law" due to a letter in which INS expressly declined to enforce her departure from the country. 553 F.2d at 847. Other state jurisdictions have also addressed this question and when faced with similar facts have concluded that an alien, with legal permission to work, is entitled to accumulate wage credits and receive unemployment compensation benefits.

In the case cited by Vazquez, *Rubio v. Employment Division* (1984) 66 Or.App. 525, 674 P.2d 1201, the court determined that Rubio was permanently residing in the United States under color of law because INS repeatedly and routinely extended Rubio's departure date and work permits. Rubio was found to be eligible to receive unemployment compensation benefits despite the fact that Rubio's petition for permanent status was still pending. Like Vazquez, Rubio had received routine extensions transmitted upon INS forms I–210,

granting him work authorization pending a determination on Rubio's petition for permanent residency. We do not agree with Review Board's contention that *Rubio* is distinguishable because of the nature of Rubio's petition. What is critical is INS's *actions* under the law, not the character of residency sought by the petitioner.

Similarly, in *Vespremi v. Giles* (1980) 68 Ohio App.2d 91, 427 N.E.2d 30, the claimant was deemed to be eligible to receive unemployment compensation benefits. Vespremi entered the country upon a two-year exchange student visa with an accompanying work permit. Vespremi requested asylum after his passport, visa and work permit had expired and after INS had begun deportation proceedings. The Ohio court, relying upon its particular statute, stated that Vespremi had been lawfully admitted and was not disqualified from receiving benefits by virtue of his alien status. 427 N.E.2d at 31.

In *Arteaga v. Industrial Commission of Colorado* (1985) Colo.App., 703 P.2d 654, construing a statute virtually identical to I.C. 22–4–14–9, the Colorado Court of Appeals reached a similar conclusion. Arteaga originally entered the country illegally but married a United States citizen who petitioned for resident alien status on Arteaga's behalf. INS granted Arteaga permission to work pending a determination on his petition. The court concluded that Arteaga was permanently residing in the country under color of law and that

"INS was fully aware of his [Arteaga's] technically illegal presence and yet consented to it by suspending efforts to deport him and by authorizing him to work." 703 P.2d at 657.

*See also Zanjani v. Industrial Commission of Colorado* (1985) Colo.App., 703 P.2d 652; *Yatribi v. Industrial Commission of Colorado* (1985) Colo.App., 700 P.2d 929. *But cf. Duenas-Rodriguez v. Industrial Commission of Colorado* (1980) 199 Colo. 195, 606 P.2d 437 (alien whose entry was illegal and who had no work authorization was unavailable for work and therefore ineligible to receive un-

employment compensation benefits); *Pinilla v. Board of Review in Department of Labor and Industry* (1978) 155 N.J.Super. 307, 382 A.2d 921 (affirming the denial of benefits to alien arrested as an illegal alien and not granted permission to work at any stage of the proceedings).

The Supreme Court of Utah construed coverage of that state's unemployment compensation laws to include an alien whose original entry into the United States was illegal. In *Antillon v. Department of Employment Security* (1984) Utah, 688 P.2d 455, the court reversed the Commission's determination that Antillon had been ineligible to receive benefits paid during three separate periods of unemployment between 1981 and the end of 1982. Antillon had entered the country illegally in 1971 but had worked with one employer since 1978. In 1980, Antillon had filed documents with the American consulate in Mexico to become a United States citizen. He followed this request up with a visit to INS in Salt Lake City, Utah, where INS issued him a form I–210 granting him one month to depart voluntarily and permission to work in the interim. 688 P.2d at 457. The court did not disqualify Antillon because of his illegal entry, stating that

> "[w]hile there is little doubt that Antillon would have a stronger case had he entered the country legally, this does not bar him from currently residing here under color of law." 688 P.2d at 458.

The court concluded that Antillon was eligible to receive unemployment compensation benefits as he was residing in the United States with the knowledge and acquiesence of INS. *Id.* at 459.

■ Although these cases are not binding, we deem their analyses persuasive. In order to support his assertion that he was permanently residing in the United States

under color of law, Vazquez must have been legally authorized to work during the time necessary to accumulate the required work credits. If Vazquez accumulated wage credits pursuant to validly issued work authorization,[4] he is entitled to receive unemployment compensation benefits based upon those credits until and unless this authorization is terminated by the denial of Vazquez's petition for asylum and/or legal proceedings of deportation. The referee concluded that Vazquez was first authorized to work as of August 9, 1983; however, that conclusion did not consider the effect, if any, of the employment authorization language noted on the INS forms I–210 which Vazquez attempted to introduce at the hearing before the appeals referee. The determination concerning Vazquez's eligibility for unemployment compensation benefits might well differ in light of those exhibits.

We therefore reverse the decision of the Review Board and remand this cause to the Board for its reconsideration of Vazquez's claim in light of this opinion. The Review Board may, in its discretion, admit such additional evidence as will assist its reconsideration of this issue.

Our disposition is a final disposition of this appeal. We do not retain jurisdiction. Should any party deem himself aggrieved by a future decision of the Board in this matter, a new appeal must be initiated.

BUCHANAN, C.J., and SHIELDS, J., concur.

---

**4.** Pursuant to 8 CFR § 109.1(b)(2), Vazquez was entitled to receive "permission to be employed for the period of time necessary to decide the case." Thus, the INS's issuance of a work permit would constitute action "under color of law" within the definition espoused by *Holley v. Lavine, supra,* 553 F.2d at 849. The challenged exhibits appear to indicate that Vazquez initially received work authorization at least through

April, 1979. One of the admitted exhibits, an Arrival-Departure Record dated July 14, 1980, contains a notation which appears to indicate that employment was authorized as of August 9, 1983. Although Vazquez testified that INS authorized him to work continuously since the time of the filing of his petition for asylum, the appeals referee made no finding upon this particular point.