**DIVISION OF EMPLOYMENT AND TRAINING, Petitioner,**

v.

**Slawomir TURYNSKI; Jan Plesniak; Kazimierz Kozak; and Industrial Commission (Ex-Officio Unemployment Compensation Commission of Colorado), Respondents.**

No. 85SC240.

Supreme Court of Colorado,
En Banc.

April 6, 1987.

Rehearing Denied April 27, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Christa D. Taylor, Asst. Atty. Gen., Human Resources Section, Denver, for petitioner.

Robert G. Heiserman, Rebecca P. Burdette, Denver, for respondent Kozak.

No appearance for respondents Turynski and Plesniak.

DUBOFSKY, Justice.

We granted certiorari to review the judgment of the court of appeals in *Division of Employment and Training v. Industrial Commission*, 705 P.2d 1022 (Colo.App. 1985), involving the eligibility for unemployment insurance benefits of three Polish nationals whose petitions for political asylum in this country were pending before the United States Immigration and Naturalization Service (INS). The INS had authorized the three claimants to seek employment at the time they earned the wage credits required for unemployment compensation eligibility. The Division of Employment and Training (the division) denied the claimants' requests for unemployment benefits. The Industrial Commission (the commission) ruled in favor of the claimants and reversed the division's denial. The court of appeals determined that the claimants were "permanently residing in the United States under color of law" during the base periods used to determine eligibility for unemployment compensation under section 8–73–107(7)(a), 3 C.R.S. (1984 Supp.), and that they therefore were entitled to benefits.

We affirm the judgment of the court of appeals.

## I.

Slawomir Turynski, Jan Plesniak, and Kazimierz Kozak, citizens of Poland, entered the United States as visitors-for-pleasure with "B–2" visas on November 27, 1980, June 23, 1981, and March 30, 1977, respectively. Turynski and Plesniak requested and received extensions of their "B–2" status from the INS until February 9, 1982, the date they applied for asylum. Kozak failed to request an extension of his visa but remained in the United States. The INS commenced deportation proceedings against him. Kozak applied for asylum as an affirmative defense to deportation on December 3, 1980. The three petitions for asylum have yet to be adjudicated, and the United States Attorney General has granted Polish nationals "extended voluntary departure," which suspends deportation proceedings indefinitely.[1] The INS granted the three claimants work authorization after they applied for asylum.

Turynski and Plesniak worked for a Colorado employer while under the "B–2" status and after the date they applied for asylum. Their employment was terminated on October 8, 1982. They applied for unemployment benefits based on wages earned during the entire period they were employed. Kozak's employment ended on January 11, 1983. He claimed benefits based on wages earned only after he applied for asylum.

The division initially paid all three claims. Later the division denied the claims and ruled that the claimants were liable for overpayment of benefits to which they were not entitled because there is no implied permanency in the residence of applicants for political asylum and thus the claimants did not qualify as aliens "permanently residing in the United States under color of law." The commission reversed the division's decision on the grounds that the claimants intended to become permanent residents and the INS repeatedly granted them work extensions sufficient to bring them within the "permanently residing in the United States under color of law" criteria of section 8–73–107(7)(a), 3 C.R.S. (1984 Supp.). The court of appeals, relying on its decision in *Arteaga v. Industrial Com'n of State,* 703 P.2d 654 (Colo. App.1985), affirmed the commission's ruling. The court noted that all three claimants had applied for asylum, had established permanent homes in the United States, and had obtained leave to stay and work in the country while their applications were pending. Moreover, because of the political situation in Poland, the federal government had placed a moratorium on the forced departure of Polish nationals illegally present in this country. The court concluded that each claimant was eligible for unemployment benefits based on wages earned during any lawfully accrued eligibility period.

## II.

In *Industrial Commission v. Arteaga,* 735 P.2d 473 (Colo.1987), we summarized the purposes of the Colorado Employment Security Act (CESA) and the Fed-

1. The term "extended voluntary departure" describes an immigration status subject to the United States Attorney General's discretion, based on circumstances of foreign and domestic policy, to grant a temporary suspension of deportation proceedings to members of a particular class of aliens who are in the United States illegally. *Hotel & Restaurant Employees Union, Local 25 v. Smith,* 594 F.Supp. 502 (D.C.D.C. 1984). *See also* Comment, *Salvadoran Illegal Aliens: A Struggle to Obtain Refuge in the United States,* 47 U.Pitt.L.Rev. 295 at 309–314 (1985). During the past 25 years, for varying periods of time, nationals from Cuba, the Dominican Republic, Czechoslovakia, Chile, Cambodia, Vietnam, Laos, Lebanon, Ethiopia, Uganda, Iran, Nicaragua and Poland have received extended voluntary departure status. *Id.* at 310 n. 92. The current INS policy not to initiate deportation proceedings against Polish nationals has been in effect since December 23, 1981. INS Central Office Wires 243.10–P 12/23/81— 12/23/86. Once a class is granted extended voluntary departure, individual determination of eligibility to remain in the United States for an alien in that class is not required. Since October 24, 1986, under 8 C.F.R. § 109.1(a)(7) the INS has granted employment authorization automatically to any alien "who is a member of a nationality group who has been granted blanket extended voluntary departure." *See* 51 Fed. Reg. 44,782 (1986).

eral Unemployment Tax Act (FUTA) and the eligibility requirements under both statutes for the payment of unemployment compensation to aliens. Section 8–73–107(7)(a), 3 C.R.S. (1984 Supp.) and 26 U.S.C. § 3304(a)(14)(A) (1976). Section 3304(a)(14)(A) provides:

> Compensation shall not be payable on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent residence at the time such services were performed, was lawfully present for purposes of performing such services, or was permanently residing in the United States under color of law at the time such services were performed (including an alien who is lawfully present in the United States as a result of the application of the provisions of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act),....[2]

Whether the claimants were persons "permanently residing in the United States under color of law" is the issue before us.

We defined "permanently residing in the United States under color of law" in *Industrial Commission v. Arteaga* based on a definition of "permanent" in the Immigration and Nationality Act and a definition of "under color of law" in *Holley v. Lavine*, 553 F.2d 845 (2d Cir.1977), *cert. denied*, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978). "Permanent" means "a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law." 8 U.S.C. § 1101(a)(31) (1976). "Temporary" applies to aliens who have no intention of abandoning their foreign residence, including tourists, students, and temporary workers and teachers. *See* 8 U.S.C. § 1101(a)(15)(B), (F), (H) and (J) (1970 &

Supp.1986). "Under color of law" was defined in *Holley*, 553 F.2d at 849–50, as meaning:

> that which an official does by virtue of power, as well as what he does by virtue of right. The phrase encircles the law, its shadows, and its penumbra. When an administrative agency or a legislative body uses the phrase "under color of law" it deliberately sanctions the inclusion of cases that are, in strict terms, outside the law but are near the border.

The division, in arguing that "permanently residing in the United States under color of law" does not apply to these claimants, relies on *Sudomir v. McMahon*, 767 F.2d 1456 (9th Cir.1985). *Sudomir* addressed aliens' eligibility for Aid to Families with Dependent Children under 42 U.S.C. § 602(a)(33) (1982), which contains "permanently residing" language identical to that in the state and federal unemployment statutes. The court in *Sudomir* concluded that:

> the [Health and Human Services] Secretary's assertion that Congress never intended to extend welfare benefits to aliens whose presence in the United States is unlawful and whose sole claim to entitlement rests on their filing applications for asylum with the INS is reasonable and, accordingly, permissible.

*Id.* at 1464. The court found that the claimants were present "under color of law" but denied benefits because they were not "permanently residing in the United States." *Id.* at 1461. The court reasoned that the definition of "permanent" provided in 8 U.S.C. § 1101(a)(31) did not embrace "transitory, inchoate, or temporary relationships." *Id.* at 1462. The court held that asylum applicants occupy an inchoate status because their presence in this country is merely tolerated pending processing of their application. *Id.*[3]

---

**2.** Section 8–73–107(7)(a), 3 C.R.S. (1984 Supp.) is identical to section 3304(a)(14)(A) except that section 8–73–107(7)(a) refers to "benefits" payable instead of "compensation" payable.

**3.** The dissenting judge in *Sudomir v. McMahon*, 767 F.2d at 1467–68 (9th Cir.1985) (Canby, J., dissenting), disagreed with the conclusion that

asylum applicants were not "permanent residents" on the ground that federal law allows applications for asylum by "those who cannot or will not return to their own countries 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.' 8 U.S.C. § 1101(a)(42),"

*Sudomir* does not provide authority, however, for resolving the issues in this case in the division's favor. The court in *Sudomir* specifically noted that the INS had not granted any of the named plaintiffs in that case authority to work. *Id.* at 1458. The court also noted that the Secretary of Health and Human Services viewed aliens who had been granted indefinite stays of deportation under 8 C.F.R. § 243.4 (1985)[4] or extensions of voluntary departure under 8 C.F.R. §§ 242.5(a) (2)–(3) and 244.2 (1985) as eligible for AFDC benefits. *Id.* at 1460. Finally, the court distinguished the legislative intent behind section 3304(a)(14)(A), which it interpreted as allowing unemployment benefits to aliens who are lawfully present to work in the United States for temporary periods from the legislative history behind the allocation of AFDC benefits. *Id.* at 1464. *Sudomir* does not apply to applicants for asylum who seek unemployment compensation benefits, to applicants for asylum who are lawfully present to work, or to applicants for asylum who are covered by a policy of extended voluntary departure.

Several state courts have determined that applicants for asylum qualify as persons "permanently residing in the United States under color of law" and are thus eligible for unemployment benefits. *Vazquez v. Rev. Bd. of Ind. Emp. Sec. Div.*, 487 N.E.2d 171 (Ind.App.1985); *Vespremi v. Giles*, 68 Ohio App.2d 91, 427 N.E.2d 30 (1980); *Gillar v. Employment Division*, 300 Or. 672, 717 P.2d 131 (1986) (renewing asylum request before immigration judge in a deportation proceeding is sufficient to qualify claimant for unemployment "under color of law"). *See also Ibarra v. Texas Employment Commission*, 645 F.Supp. 1060 (E.D.Tex.1986) (settled by consent decree). *But see Zurmati v.*

*McMahon*, 180 Cal.App.3d 164, 225 Cal. Rptr. 374 (1986) (*Sudomir* followed; asylum applicant denied unemployment benefits). In the case before us we need not resolve whether an applicant for asylum who has not been granted work authorization by the INS or who does not qualify for extended voluntary departure status is entitled to unemployment compensation benefits.

In *Arteaga*, we concluded that unemployment claimants who had earned sufficient work credits after they had filed petitions for immediate relative status and while they had authorization from the INS to work were eligible for unemployment compensation. We based that determination on our understanding of American immigration policy, the purpose of unemployment compensation, the source of the funds providing unemployment compensation benefits, and the public policy implications were we to hold the claimants were not entitled to unemployment compensation. We see no reason to exclude the claimants here, who are members of a nationality group that has been granted extended voluntary departure status by the INS and who had received authorization to work when they obtained employment and earned wage credits, from eligibility for unemployment compensation benefits. They should have received wage credits entitling them to unemployment compensation eligibility for the period of time during which they qualified for extended voluntary departure and had authorization to work.

■ Judgment affirmed.[5]

ROVIRA, J., dissents and VOLLACK, J., joins in the dissent.

---

and that processing applications for asylum takes the INS from three to six years. *Id.*

4. The INS generally does not commence deportation proceedings until after an application for asylum has been denied. 8 C.F.R. § 208.8(f)(4) (1987) (giving the district director discretion to grant voluntary departure or to commence deportation proceedings upon the denial of an applicant's request for asylum).

5. Claimant Kozak requests that this court grant him costs. Kozak contends that the division, by appealing the industrial commission's award of benefits to the court of appeals and by petitioning for certiorari from the court of appeals' affirmance of the commission ruling, has waived immunity and caused the claimant to incur high costs. C.A.R. 39(a) provides that if a judgment is affirmed, costs shall be taxed against the appellant unless otherwise ordered. C.A.R. 39(b) provides that in cases involving a

ROVIRA, Justice, dissenting:

For the reasons set out in my dissent in *Industrial Commission v. Arteaga*, 735 P.2d 473 (Colo.1987), I respectfully dissent.

I am authorized to state that Justice VOLLACK joins in this dissent.

state agency, if an award of costs against the state is authorized by law, costs shall be awarded in accordance with C.A.R. 39(a).

The question, then, is whether an award of costs against the state is authorized by law. Section 8–80–102, 3B C.R.S. (1986) in relevant part provides, "[N]o ... suit [shall be] brought for attorneys fees ... for services rendered for the collection of any individual's claim for benefits." The same section provides for payment of the costs of preparing a transcript of the referee's decision if a party wishes to appeal to the commission, but the statute does not address payment of costs in the appellate courts. In *Lee v. Colorado Dept. of Health*, 718 P.2d 221 (Colo. 1986), we upheld an assessment of costs by the trial court against a state agency where the prevailing party recovered damages for personal injuries from the agency. We ruled that, in light of the general rule that a prevailing party may recover costs unless a statute or rule specifically prohibits such an award, the fact that the relevant statute does not expressly provide for an assessment of costs will not prevent collection of costs from a public entity in connection with a judgment entered against it. *Id.*, 718 P.2d at 228–229. *See also Weld County Bd. of County Com'rs v. Slovek*, 723 P.2d 1309, 1313–1314 (1986). We conclude that if Kozak files the proper documentation under C.A.R. 39(d) with the clerk of this court in a timely manner he shall be entitled to have his costs on appeal in this court inserted in the mandate.