Martin SANDOVAL, Petitioner,

v.

**COLORADO DIVISION OF EMPLOY-MENT and Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 87CA0319.

Colorado Court of Appeals,
Div. II.

May 5, 1988.

Rehearing Denied June 9, 1988.

Colorado Rural Legal Services, Inc., Dani Lisa Arck, Brian Patrick Lawlor, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mary Ann Whiteside, Asst. Atty. Gen., Denver, for respondents.

PLANK, Judge.

Claimant, Martin Sandoval, seeks review of a final order of the Industrial Claim Appeals Office (Panel) holding that he was monetarily ineligible for benefits because

of his immigration status during the base period. We set aside the order.

As a child, claimant accompanied his parents into the United States without inspection. About four years later, in 1978, claimant's parents, but not claimant, were issued work authorization permits by the Immigration and Naturalization Service (INS).

In early 1984, the INS initiated deportation proceedings against claimant, but claimant challenged that action pursuant to 8 U.S.C. § 1254 based on seven years continuous presence in the U.S., good moral character, and extreme hardship to the applicant or legally present family members.

On December 14, 1984, claimant married a U.S. citizen, and on March 7, 1985, his wife filed a petition in his behalf for immediate relative immigration status. The petition was granted on May 16, 1985. On February 20, 1986, claimant's status was adjusted to lawful permanent resident.

Meanwhile, claimant was separated from his employment, and on April 29, 1986, applied for unemployment compensation benefits based on wages earned in the period from January 1, 1985, to December 31, 1985.

■ The Panel denied claimant's request for benefits on the grounds that at all times during his base period claimant failed to meet the criteria set forth in § 8–73–107(7)(a), C.R.S. (1986 Repl.Vol. 3B).

Claimant contends that the provisions of § 8–73–107(7)(a)(I) through (VI), C.R.S. (1986 Repl.Vol. 3B) are illustrative rather than exhaustive of the categories of aliens "permanently residing in the United States under color of law," and that he fell within the definition at all times during his base period. We agree.

Section 8–73–107(7)(a), C.R.S. (1986 Repl. Vol. 3B) provides that:

"Benefits shall not be payable on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent residence at the time such services were performed, or was lawfully present for purposes of performing such services, or was permanently residing in the United States under color of law at the time such services were performed."

Effective July 1, 1985, before claimant filed his claim, the following provisions were added.

"For purposes of the 'Colorado Employment Security Act', 'permanent resident under color of law' shall mean:

(I) An alien admitted as a refugee under section 207 of the 'Immigration and Nationality Act', 8 U.S.C. § 1157, in effect after March 31, 1980;

(II) An alien granted asylum by the attorney general of the United States under section 208 of the 'Immigration and Nationality Act', 8 U.S.C. § 1158;

(III) An alien granted a parole into the United States for an indefinite period under section 212(d)(5)(B) of the 'Immigration and Nationality Act', 8 U.S.C. § 1182(d)(5)(B);

(IV) An alien granted the status as a conditional entrant refugee under section 203(a)(7) of the 'Immigration and Nationality Act', 8 U.S.C. § 1153(a)(7), in effect prior to March 31, 1980;

(V) An alien who entered the United States prior to June 30, 1948, and who is eligible for lawful permanent residence pursuant to section 249 of the 'Immigration and Nationality Act', 8 U.S.C. § 1259; or

(VI) An alien who has been formally granted deferred action or nonpriority status by the immigration and naturalization service.

Claimant falls within none of these provisions, and thus, if they represent a complete listing of all who qualify as being permanent residents under color of law, he is not eligible for any unemployment benefits.

In order to continue to receive federal incentives, each state's unemployment insurance program must be in substantial conformity with the federal statutory requirements. *Industrial Commission v. Arteaga*, 735 P.2d 473 (Colo.1987). For example, 26 U.S.C. § 3304(a)(10) (1976) pro-

vides that "compensation shall not be denied to any individual ... for any cause other than discharge for misconduct connected with his work...." The state statutory scheme in § 8–73–108(5)(e), C.R.S. (1986 Repl.Vol. 3B) enumerates specific examples of "misconduct connected with ... work," but retains the federal statute's broad meaning by means of the catchall provision of § 8–73–108(5)(e)(XX), "for other reasons including, but not limited to" the enumerated examples of misconduct.

However, the General Assembly did not include a "catchall" provision in § 8–73–107(7)(a)(I) through (VI), C.R.S. (1986 Repl.Vol. 3B). Therefore, the subsections can be considered exhaustive rather than illustrative only if the six enumerated categories substantially cover the categories contemplated by Congress in the phrase "permanently residing in the United States under color of law." *See* 26 U.S.C. § 3304(a)(14)(A) (1976).

Congress has defined "permanently" for purposes of the Immigration and Nationality Act as a "relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States, or of the individual, in accordance with law." 8 U.S.C. § 1101(a)(31) (1976).

Congress, however, has not enacted a statutory definition of "color of law," and thus, to determine the meaning of that phrase, we examine federal case law, especially case law closely contemporaneous with Congress' enactment of the statute. *See Industrial Commission v. Arteaga, supra.*

*Holley v. Lavine,* 553 F.2d 845 (2d Cir. 1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978), decided the year after 26 U.S.C. § 3304(a)(14)(A) (1976) was enacted, is the leading federal case defining the phrase. In *Holley,* the court defined "under color of law" as meaning:

"that which an official does by virtue of power, as well as what he does by virtue of right. The phrase encircles the law, its shadows, and its penumbra. When an administrative agency or a legislative body uses the phrase "under color of law" it deliberately sanctions the inclusion of cases that are, in strict terms, outside the law but are near the border."

This definition of "permanently residing in the United States under color of law" has been applied by the federal courts for ten years, *see, e.g., Esparza v. Valdez,* 612 F.Supp. 241 (D.Colo.1985), and Congress has not, even in enacting the comprehensive Immigration Reform and Control Act of 1986, acted to change or reject it through legislation. *See Industrial Commission v. Arteaga, supra* (fn. 8).

The six categories listed in § 8–73–107(7)(a)(I) through (VI) represent some of the categories covered by the *Holley* definition. However, *Industrial Commission v. Arteaga, supra; Division of Employment & Training v. Turynski,* 735 P.2d 469 (Colo.1987) are examples of cases dealing with aliens covered by the federal definition of permanently residing in the United States under color of law, but not covered by any of the provisions of § 8–73–107(7)(a)(I) through (VI).

If we were to rule that § 8–73–107(7)(a)(I) through (VI) is an exhaustive definition of permanently residing in the United States under color of law, our state statute would exclude many aliens which Congress intended to cover by its use of the phrase, and our statute, thus, would not substantially comply with the federal standards set forth in 26 U.S.C. § 3304(a)(14)(A). Therefore, we construe § 8–73–107(7)(a)(I) through (VI) as merely being illustrative of the categories of persons included within the meaning of the phrase "permanently residing in the United States under color of law."

Next, we must determine whether claimant falls within the federal definition of "permanently residing in the United States under color of law." That definition was adopted by our state in *Industrial Commission v. Arteaga, supra,* and *Division of Employment & Training v. Turynski, supra.*

In *Arteaga* and *Turynski*, the court found that individuals who had filed petitions for adjustment of status, but had not yet been granted that adjustment were "permanently residing in the United States under color of law." Here, claimant had pending at all times during his base period at least one petition which would result in the adjustment of his status to lawful permanent resident. Thus, we conclude that claimant did as a matter of law have the necessary status to receive unemployment benefits.

Although the Panel found that claimant, unlike the claimants in *Arteaga* and *Turynski*, did not have a valid INS work authorization during his base period, claimant's lack of such an authorization is merely one factor to consider in determining whether he met the requirements of "permanently residing in the United States under color of law." *See Ibarra v. Texas Employment Commission*, 645 F.Supp. 1060 (E.D.Tex.1986), rev'd on other grounds, 823 F.2d 873 (5th Cir.1987). Because the other evidence so overwhelmingly establishes claimant's "permanent resident under color of law" status, we hold that here the lack of a work authorization permit is not determinative.

Claimant contends he is entitled to compensation on two additional statutory grounds. In view of our conclusion we need not address these contentions.

The order of the Industrial Claim Appeals Office is set aside, and the cause is remanded with directions to award claimant all benefits to which he is otherwise entitled based on the wages earned by him during the base period from January 1, 1985, to December 31, 1985.

TURSI, J., concurs.

BABCOCK, J., dissents.

BABCOCK, Judge, dissenting.

I respectfully dissent because, in my view, the General Assembly intended the provisions of § 8–73–107(7)(a)(I) through (VI), C.R.S. (1986 Repl.Vol. 3B) to be exhaustive of the categories of aliens "permanently residing in the United States under color of law." Because claimant did not meet the criteria for inclusion in any of these categories during his base period, I would affirm.

Section 8–73–107(7)(a)(I) through (VI), became effective on April 30, 1985. Colo. Sess.Laws 1985, ch. 82 at 366–367. Before this statute's adoption, this court announced *Arteaga v. Industrial Commission*, 703 P.2d 654 (Colo.1985), aff'd, *Industrial Commission v. Arteaga*, 735 P.2d 473 (Colo.1987). *Arteaga* adopted the reasoning of *Holley v. Lavine*, 553 F.2d 845 (2d Cir.1977), that "color of law" did not necessarily mean affirmative action, but could be evidenced by inaction by INS with full knowledge of the alien's illegal status.

In my view, the General Assembly's amendment of § 8–73–107(7)(a) "overruled" *Arteaga* to specify the *only* circumstances under which an alien may receive unemployment compensation benefits. The majority's interpretation of this statute as being non-exclusive represents a usurpation of the General Assembly's legislative function and renders its 1985 amendment meaningless.