No. 81–1972. PORCHER, CLAIMS ADJUDICATOR, SOUTH CAROLINA EMPLOYMENT SECURITY COMMISSION, ET AL. v. BROWN ET AL. C. A. 4th Cir. Certiorari denied.

JUSTICE WHITE, with whom JUSTICE POWELL and JUSTICE REHNQUIST join, dissenting.

Every State in the Union maintains an unemployment compensation system which provides partial wage replacement for the unemployed. The Federal Government credits employer contributions to state unemployment programs meeting certain federal requirements against the amount owing under the Federal Unemployment Tax Act, 26 U. S. C. § 3301 *et seq.* One of the requirements which state plans

must meet is that "no person shall be denied [unemployment] compensation under . . . State law solely on the basis of pregnancy or termination of pregnancy." 26 U. S. C. § 3304(a)(12). The Fourth Circuit, in the opinion below, 660 F. 2d 1001 (1981), held that the South Carolina Unemployment Compensation System did not meet the requirements of § 3304(a)(12), and upheld a District Court order requiring the South Carolina Employment Security Commission (Commission) to make retroactive payments to claimants that had been denied compensation since January 1, 1978. In so doing, the Fourth Circuit decided three issues that merit this Court's attention.

The most important issue now presented for this Court's consideration involves the meaning of § 3304(a)(12). South Carolina Code § 41–35–120 (Supp. 1982) provides that a person will not be eligible for unemployment benefits "if the Commission finds that he has left voluntarily, without good cause, his most recent work." The Commission has determined that resignation due to pregnancy or to an illness unrelated to the claimant's job makes the claimant ineligible for unemployment benefits. The Fourth Circuit held that § 41–35–120, as interpreted, did not satisfy the dictates of § 3304(a)(12). It said: "Regardless of how the Commission treats employees with other disabilities, the mandate of [§ 3304(a)(12)] is clear: the Commission cannot deny compensation 'solely on the basis of pregnancy or termination of pregnancy.'" 660 F. 2d, at 1004.

It is by no means clear, however, that § 3304(a)(12) does not simply provide that pregnancy must be treated like all other disabilities—that pregnancy simply cannot be singled out for unfavorable treatment. The Department of Labor adheres to such an interpretation, and thus disagrees with the Fourth Circuit's interpretation of § 3304(a)(12). The Department of Labor is responsible for annually determining whether state unemployment compensation programs meet the requirements set out in federal law. 26 U. S. C.

§ 3304(c).   Moreover, the Department played a role in the development of the 1976 legislation that added § 3304(a)(12) to the Federal Unemployment Tax Act.   Unemployment Compensation Amendments of 1976, § 312(a), 90 Stat. 2679. The Department of Labor has repeatedly certified that South Carolina's program, as well as the programs of eight other jurisdictions with provisions similar to that of South Carolina,* meet the requirements of § 3304(a)(12).   In addition, the Administrator of the Department's Unemployment Insurance Service submitted, on the Department's behalf, a letter to the District Court reiterating the Department's position with respect to South Carolina's program.   The Administrator explained that the South Carolina program was consistent with § 3304(a)(12) because " 'it does not distinguish between pregnant claimants or any other unemployed individuals whose separation is determined to be due to illness.' "   Brief for United States as *Amicus Curiae* 13 (quoting Administrator's letter).

At the very least then, § 3304(a)(12) is the subject of substantial uncertainty, given the clear and direct conflict between the Fourth Circuit and the Department of Labor—the agency to whom Congress entrusted administration of the statute.   The conflict the Court now leaves unresolved makes it difficult for conscientious administrators of unemployment compensation programs to determine what is required of them by the Federal Government.   The position of the unemployment insurance administrators in the eight jurisdictions, in addition to South Carolina, that deny benefits both to those who resigned because of pregnancy and to those who resigned because of some non-job-related illness is clearly perplexing.   The question presented is of obvious importance to the States; South Carolina is paying additional benefits at a rate of almost $1.5 million per year as a result of

---

*The District of Columbia, Louisiana, Missouri, Nebraska, New Mexico, Oklahoma, West Virginia, and, to a lesser extent, Vermont.   Brief for United States as *Amicus Curiae* 18, and n. 21.

the decision below. See Application for Stay of Enforcement of Judgment ¶ 7. The question is also surely important to large numbers of pregnant women for whom unemployment compensation may constitute a substantial portion of their financial resources. Apparently the question is one of "substantial concern" to the Department of Labor as well. Brief for United States as *Amicus Curiae* 7.

The second issue of significance relates to the Eleventh Amendment. This Court has held that the Eleventh Amendment prevents federal courts from entering judgments that are to be satisfied out of the State's general revenues, *Edelman* v. *Jordan*, 415 U. S. 651 (1974), or out of state segregated tax revenues, *Kennecott Copper Corp.* v. *State Tax Comm'n*, 327 U. S. 573 (1946), and *Great Northern Life Insurance Co.* v. *Read*, 322 U. S. 47 (1944). In the decision below the Fourth Circuit concluded that it could award a judgment against the South Carolina unemployment compensation fund because: (1) the fund is "a special fund administered separate and apart from all public moneys or funds of the State," (2) the fund consists of employer contributions, federal funding, investment income, and other receipts, and (3) neither the State nor the Commission is liable for any excess in obligations on the fund over its resources. 660 F. 2d, at 1006. Reliance on these distinctions is certainly questionable under this Court's previous cases. The question of whether there are some state funds that do not enjoy Eleventh Amendment immunity is important, and this case presents the Court with an opportunity to address the issue.

The third issue of significance is whether 42 U. S. C. § 1983 (1976 ed., Supp. IV) provides a cause of action to redress a State's failure to meet the standard set out in § 3304(a) (12). In *Maine* v. *Thiboutot*, 448 U. S. 1 (1980), the Court held that a plaintiff could sue to enforce a federal statute under § 1983. In *Pennhurst State School and Hospital* v. *Halderman*, 451 U. S. 1 (1981), we held that a plaintiff could not use § 1983 to enforce provisions of the Developmentally

Disabled Assistance and Bill of Rights Act of 1975, 42 U. S. C. § 6001 *et seq.* (1976 ed. and Supp. IV). We explained that a federal statute may be enforced by a § 1983 suit only if Congress has not foreclosed private enforcement of that statute in the enactment itself and if the statute created enforceable "rights" under § 1983. 451 U. S., at 28. In *Middlesex County Sewerage Authority* v. *National Sea Clammers Assn.*, 453 U. S. 1 (1981), we reaffirmed our holding in *Pennhurst, supra,* refusing to allow a § 1983 suit to enforce provisions of the Federal Water Pollution Control Act, 33 U. S. C. § 1251 *et seq.* (1976 ed. and Supp. V), and the Marine Protection, Research, and Sanctuaries Act of 1972, 33 U. S. C. § 1401 *et seq.* (1976 ed. and Supp. V). Consideration of the difficult and unanswered question of whether the Federal Unemployment Tax Act is enforceable by way of § 1983 would provide guidance to the lower federal courts on the application of *Thibotout, Pennhurst,* and *Middlesex County Sewerage Authority.*

I would grant certiorari to consider these issues.