862 F.2d 788
 49 Empl. Prac. Dec. P 38,682, Unempl.Ins.Rep. CCH 21,908
Maria ESPARZA, Eudesimo Arteaga, Reyes Nunez-Ortega, Bahman
Zanjani, individually and on behalf of all others similarly
situated, Daniel Agonafer, Jose Sandoval, and Kazimierez
Kozak, Plaintiffs-Appellants,
Consuelo Sandoval, Applicant for Joinder-Appellant,
v.
Ruben VALDEZ, Executive Director, Colorado Department of
Labor, John Kezer, Director, Division of Employment and
Training, Industrial Commission of Colorado, (Ex-Officio the
Unemployment Compensation Commission), in their official
capacities, Defendants-Appellees.
 No. 85-2187.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 29, 1988.
 
 David F. Steinhoff (Brian Patrick Lawler, with him on the briefs), Colorado Rural Legal Services, Inc., Denver, Colo., for plaintiffs-appellants.
 Kathryn J. Aragon, Asst. Atty. Gen. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Christa D. Taylor, Asst. Atty. Gen., on the brief), Human Resources Section, State of Colo., Denver, Colo., for defendants-appellees.
 Richard K. Willard, Asst. Atty. Gen., Thomas W. Hussey, Asst. Director, and Donald E. Keener, Attorney, Office of Immigration Litigation, Dept. of Justice, Washington, D.C., filed a brief for the U.S. as amicus curiae.
 Marcia Egger, New York City, filed a brief for the Nat. Employment Law Project as amicus curiae.
 Daniel A. Stein, Washington, D.C., and William M. Bass, Denver, Colo., filed a brief for the Federation for American Immigration Reform as amicus curiae.
 Before LOGAN, McWILLIAMS and TACHA, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Four individual aliens who were denied unemployment insurance benefits by Colorado state authorities commenced suit in federal district court seeking declaratory and injunctive relief for themselves and others similarly situated, whom they sought to represent as a class. The individual claims of three other aliens were later joined, and another alien continues to seek joinder. They asserted jurisdiction under 28 U.S.C. Sec. 1331 and 42 U.S.C. Sec. 1983, alleging that state authorities were denying them their entitlement under federal law, the Federal Unemployment Tax Act (FUTA), 26 U.S.C. Secs. 3301-3311, particularly as aliens "permanently residing in the United States under color of law" (the "PRUCOL" provision). See id. Sec. 3304(a)(14)(A). The district court deferred the class certification question but heard evidence on a preliminary injunction motion. On the basis of that hearing, the district court denied relief and dismissed the suit.
 
 
 2
 On appeal, plaintiffs contend that the district court misconstrued the PRUCOL provision of FUTA, erred by failing to consider plaintiffs' other statutory and constitutional claims, erred in not certifying a class, and improperly denied plaintiffs attorney's fees and costs under 42 U.S.C. Sec. 1988. There are other issues, however, that we must consider to properly resolve this appeal.
 
 
 3
 Understanding the issues in this case requires some consideration of the peculiar FUTA scheme by which the federal and state governments cooperate to provide assistance to unemployed workers. Under FUTA, the federal government helps states fund the costs of administering unemployment compensation programs while leaving most of the actual raising and all of the paying out of benefit monies to the states. See Ibarra v. Texas Employment Comm'n, 823 F.2d 873, 874-75 (5th Cir.1987).
 
 
 4
 To be eligible for federal assistance, a state's unemployment compensation program must comply with certain federal standards. See 26 U.S.C. Sec. 3304(a); 42 U.S.C. Sec. 503(a). Of primary importance in the case at bar is 26 U.S.C. Sec. 3304(a)(14)(A), which provides that
 
 
 5
 "compensation shall not be payable on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent residence at the time such services were performed, was lawfully present for purposes of performing such services, or was permanently residing in the United States under color of law at the time such services were performed (including an alien who was lawfully present in the United States as a result of the application of the provisions of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act),...."
 
 
 6
 Colorado chose to participate in FUTA, and has incorporated Sec. 3304(a)(14)(A) verbatim into its Employment Security Act (CESA), Colo.Rev.Stat. Secs. 8-70-101 to 8-82-105, except that it substituted the word "benefits" for "compensation." See id. Sec. 8-73-107(7)(a). To be eligible for benefits, a claimant must complete a work base period consisting of at least two consecutive quarters of employment within one year of applying for benefits. See id. Secs. 8-70-103(1), 8-73-102(1).
 
 
 7
 Plaintiffs apparently have been employed the requisite amount of time to qualify for unemployment benefits. They all applied to the Colorado Department of Labor for benefits and, on the basis of their alien status, were either turned down or were requested to repay benefits they were granted initially. In lieu of or while filing an appeal permitted them under CESA, see id. Secs. 8-74-103, -104, -107, plaintiffs brought the instant action in federal district court, alleging that they were wrongfully denied rights guaranteed them under FUTA, 42 U.S.C. Sec. 503(a), and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiffs sought a declaration enforceable against the State of Colorado that they were entitled to unemployment benefits, and an injunction ordering the state to cease withholding benefits. They also sought the certification of a class consisting of all aliens who, since 1979, wrongfully were denied benefits under 26 U.S.C. Sec. 3304(a)(14), and monetary relief for those aliens. This class was divided into two subclasses, consisting of claimants who, during their work base period, were either "lawfully present for performing services" or "permanently residing under color of law."
 
 
 8
 The district court explicitly addressed only the PRUCOL claim, characterizing plaintiffs' contention for a construction of the identical FUTA and Colorado statutory sections as one that entitled any alien to benefits "whose presence in the United States is known to the INS [Immigration and Naturalization Service] and that agency has acquiesced in the continued residence of the worker by some action or inaction." Esparza v. Valdez, 612 F.Supp. 241, 243 (D.Colo.1985). The district court disagreed with this construction, and viewed the statutes as permitting payment of unemployment benefits only to those aliens to whom the INS had granted an immigration status allowing them "to remain in the United States for an indefinite period of time." Id. at 244. The district court's construction apparently would require individual consideration of each alien's status, first by the INS, which would have to grant the alien a right to remain in the United States for an indefinite period of time, and then by Colorado officials, who would have to find that the alien satisfied employment status and history requirements entitling them to benefits. See id.
 
 
 9
 The district court dismissed plaintiffs' claims because none had shown that a state administrative tribunal had denied unemployment benefits to any individual alien during a period the alien had held an INS "indefinite stay" status. The court evidently concluded that this individualized consideration precluded class representation. The district court entered a final judgment dismissing all plaintiffs' claims without prejudice, leaving them free to pursue their individual claims on the merits before the INS and the state agency. The court did not address the "lawfully present for performing services" provision of Sec. 3304(a)(14)(A), nor was that provision seriously urged upon the court as a basis for plaintiffs' eligibility. The plaintiffs' request for attorney's fees was denied and their other statutory and constitutional claims were not addressed.
 
 
 10
 While this action was being prosecuted in federal court, three of the plaintiffs were pursuing simultaneous appeals of the denial of their benefits in the Colorado state court system. Ultimately, the Colorado Supreme Court ruled in favor of all three plaintiffs, finding that they fit within the PRUCOL exception to the prohibition on alien benefits. See Industrial Comm'n v. Arteaga, 735 P.2d 473 (Colo.1987); Division of Employment and Training v. Turynski, 735 P.2d 469 (Colo.1987). Subsequently, two other plaintiffs were granted relief by the state because of state administrative appeals they had pending at the time the Arteaga and Turynski decisions were announced.
 
 
 11
 Noting the Colorado Supreme Court decisions, this court issued an order to the parties to show cause why the entire appeal should not be dismissed as moot or because of the preclusive effect of the Colorado decisions. Responding, the state argued for dismissal on the basis that those who appealed in state court had obtained essentially the relief they sought and no longer had a justiciable claim, and that the others' failure to pursue state appeals should preclude prosecution of a Sec. 1983 claim. The United States as amicus curiae argued that the case was not moot because the district court opinion was a declaratory judgment on the meaning of the PRUCOL provision of FUTA, not an adjudication of individual claims. It also asserted that we should not vacate the earlier district court opinion, which it asserts correctly interprets the PRUCOL provision, because of later incorrect state court opinions that put the state on a collision course with federal authorities.[1] Plaintiffs argue that the cause is not moot because some plaintiffs have not been given relief and the others may still serve as class representatives. They also assert that federal common law principles and certain provisions of CESA prohibit our giving preclusive effect to the state court decisions.
 
 
 12
 In their complaint, plaintiffs request both prospective relief, in the form of a declaration and injunction prohibiting the state from future violations of federal law, and retrospective relief, embodying claims for accrued benefits wrongfully withheld. We deal first with the claim for prospective relief.
 
 
 13
 * An established principle of federal jurisprudence is that "an actual controversy must exist at all stages of appellate review, not merely at the time the complaint is filed." Honig v. Doe, --- U.S. ----, 108 S.Ct. 592, 607, 98 L.Ed.2d 686 (1988) (Rehnquist, C.J., concurring). Jurisdiction over plaintiffs' claims for future relief is appropriate only if a "reasonable likelihood" exists that plaintiffs or other aliens they seek to represent will again be subjected to denials of benefits based on an eligibility interpretation of the unemployment statute different from that which they assert as correct. See id. 108 S.Ct. at 601 (majority opinion). In the period since the district court's decision in this case, there have been several major developments that we believe preclude the reasonable likelihood of a reoccurrence of the complained-of interpretation. Therefore we dismiss as moot the claims for prospective declaratory and injunctive relief.
 
 
 14
 First we point to the Colorado Supreme Court's decisions in Arteaga and Turynski. Without expressing an opinion on the correctness of their interpretation of the PRUCOL provision, we note that the Colorado Supreme Court reads the provision more expansively than did the district court in the decision before us for review. The district court apparently would require alien claimants to have been granted express or formal "indefinite stay" status by the INS. The Colorado Supreme Court granted unemployment compensation to aliens who did not hold such status.
 
 
 15
 In Arteaga, aliens married to American citizens had applied for permanent status on the basis of that marriage, and, pursuant to its practice of not deporting during the pendency of such cases, the INS had permitted the aliens to work. The Colorado Supreme Court found these aliens qualified for benefits under the PRUCOL provision. In Turynski, the court made the same finding when deportation proceedings were stayed against applicants for political asylum, basing the ruling on the Attorney General's grant of "extended voluntary departure" to a class of aliens that included the claimants, and because these aliens had received INS work authorization for the relevant periods. Thus, these decisions gave unemployment benefits under PRUCOL to aliens who did not have individualized formal grants of an "indefinite stay" status by the INS, but who had been authorized to work.
 
 
 16
 At most, plaintiffs in the present case seek a declaration that an otherwise eligible alien claimant qualifies under PRUCOL whenever the INS knows of the alien's presence in the United States and, by either action or inaction, has acquiesced in his continued presence. We believe the Colorado decisions have adopted such an interpretation; at least they clearly have adopted a standard that would provide relief to many more of the individual and class plaintiffs than under the district court's standard.
 
 
 17
 Further, in 1985 Colorado amended CESA to provide a definition of the PRUCOL provision that would cover some of these claims.[2] While the amendment arguably restricts the PRUCOL provision interpretation of Arteaga and Turynski, the Colorado Court of Appeals has construed it to have no such effect. See Sandoval v. Colorado Div. of Employment, 757 P.2d 1105 (Colo.Ct.App.1988), cert. denied, Colo.Sup.Ct., Oct. 17, 1988. The Sandoval court afforded relief under the statute even to an alien who lacked work authorization but who had a petition for adjustment of status pending during his work base period.
 
 
 18
 Even if the Colorado decisions would not grant the prospective relief sought by all individual plaintiffs and members of the class sought to be certified, two additional intervening developments together serve to render this controversy moot. First, in Sec. 274A(a)(1) of the Immigration Reform and Control Act of 1986 (IRCA), 8 U.S.C. Sec. 1324a(a)(1), Congress made it unlawful for an employer to hire an alien who lacks INS work authorization or other formal government authorization. Thus, plaintiffs appear to be foreclosed from seeking relief for aliens lacking such authorization.[3]
 
 
 19
 Second, to the extent aliens have work authorization during their base period and at the time benefits are claimed, the Department of Labor (DOL) has issued an opinion letter directing state agencies to grant them benefits if they are otherwise eligible. Unemployment Insurance Program Letter No. 1-86, 51 Fed.Reg. 29,713 (1986) [hereinafter DOL Letter No. 1-86]. In that letter, the DOL adopted an interpretation of the PRUCOL provision very similar to that of the district court. Id. Sec. 4(d). However, it interpreted the "lawfully present for purposes of performing services" provision of FUTA Sec. 3304(a)(14)(A) to encompass "aliens who are permitted to work by the INS regardless of their status in the United States." DOL Letter No. 1-86, supra, Sec. 4(c)(3). Thus, the individual and class plaintiffs will now receive the relief they seek, although possibly under a different clause in FUTA Sec. 3304(a)(14)(A). If Colorado officials were to ignore this directive, an alien claimant would have recourse to the Colorado courts. There, an appellate court already has relied on DOL Letter No. 1-86 in granting benefits to an alien that a state agency had found ineligible under the PRUCOL provision. See Bushehri v. Industrial Claims Appeals Office, 749 P.2d 439 (Colo.Ct.App.), cert. denied, (Colo.Sup.Ct., Oct. 8, 1987).
 
 
 20
 It is true, of course, that the political winds on the sea of federal agency interpretation could blow in a different direction at a future date, making further interpretation of the PRUCOL provision necessary, but that possibility is too speculative and remote to bring this case within any exception to the traditional mootness doctrine. See Honig, 108 S.Ct. at 601; Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). Therefore we dismiss plaintiffs' claims for prospective relief as moot.
 
 II
 
 21
 Plaintiffs also seek the payment of past unemployment benefits that they assert were wrongfully withheld. The claims of those who pursued their appeals in the state system and were awarded relief as a result of the Arteaga and Turynski opinions are moot, of course. But we must consider the claims of those plaintiffs and members of the putative class who chose not to appeal in the state courts.[4]
 
 
 22
 We have significant Eleventh Amendment concerns here because plaintiffs seek a judgment for direct payments from a state-administered fund for past violation of alleged federal rights.[5] Because each claimant would have to establish rights under other eligibility criteria, which we assume would be in state proceedings, the complaint also apparently seeks a declaratory judgment, binding in those state proceedings, that these officials have improperly construed the federal FUTA statute.
 
 
 23
 The defendants have raised no Eleventh Amendment defense, and we face a threshold question whether we can or should consider the issue. The Supreme Court appears never to have decided precisely whether a court can or should raise Eleventh Amendment jurisdictional issues sua sponte. Because the state can waive the Eleventh Amendment defense, the Supreme Court has "never held that it is jurisdictional in the sense that it must be raised and decided by this Court on its own motion." Patsy v. Board of Regents, 457 U.S. 496, 516 n. 19, 102 S.Ct. 2557, 2567-68 n. 19, 73 L.Ed.2d 172 (1982). Nevertheless, the Court in Edelman v. Jordan, 415 U.S. 651, 677-78, 94 S.Ct. 1347, 1362-63, 39 L.Ed.2d 662 (1974), considered the Eleventh Amendment defense sufficiently like a jurisdictional issue to permit it to be raised for the first time on appeal. And in Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984), the Court at least inferred that sua sponte consideration is necessary when it stated that no basis of jurisdiction can override the Eleventh Amendment, and that "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." Other recent circuit decisions have held that the court of appeals may raise the Eleventh Amendment issue sua sponte. E.g., Estate of Ritter v. University of Michigan, 851 F.2d 846, 851 (6th Cir.1988); Demery v. Kupperman, 735 F.2d 1139, 1149 n. 8 (9th Cir.1984), cert. denied, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985). We conclude that we should follow these circuits, and therefore we will consider the Eleventh Amendment issues in this case.
 
 
 24
 Insofar as we are being asked for a declaration that state officers' past action in interpreting FUTA (or the state's identical section) was in violation of federal rights, the Supreme Court, in Green v. Mansour, 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985), stated as follows:
 
 
 25
 "We think that the award of a declaratory judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's [a state officer's] action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment."
 
 
 26
 An award of damages to be paid directly out of state funds for federal law violations also is prohibited generally by the Eleventh Amendment. Edelman, 415 U.S. at 663, 94 S.Ct. at 1355. But some district courts and one circuit have allowed plaintiffs to sue a state in federal court for recovery of past unemployment claims, principally on the grounds that the state's unemployment compensation fund is a special, segregated fund as distinguished from a general revenue fund. See Brown v. Porcher, 660 F.2d 1001, 1007 (4th Cir.1981), cert. denied, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983), overruled on other grounds, Wimberly v. Labor & Indus. Relations Comm'n, 479 U.S. 511, 107 S.Ct. 821, 93 L.Ed.2d 909 (1987). The validity of this distinction has been questioned by three Justices dissenting from the denial of certiorari in that case. See Porcher v. Brown, 459 U.S. 1150, 1153, 103 S.Ct. 796, 797-98, 74 L.Ed.2d 1000 (1983) (White, J., joined by Powell & Rehnquist, JJ., dissenting from denial of certiorari). We have great difficulty with the distinctions drawn by the Fourth Circuit and the district courts on which it relies, especially considering the similarity between the unemployment compensation scheme under FUTA, and the federal-state program at issue in Edelman. The program in Edelman concerned aid to the aged, blind or disabled; it was administered pursuant to federal regulations, and involved monies in the state treasury that came in part from the federal government. See also Rothstein v. Wyman, 467 F.2d 226, 236-38 (2d Cir.1972), cert. denied, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973).
 
 
 27
 We do not believe that a state's sovereign immunity from suits for past damages can be abrogated through reliance on notions of whether such relief would be paid out of a general or special revenue fund. Either way, an injunction ordering retroactive benefits effectively would be "an award of money damages for past violations of federal law" that is precluded by the Eleventh Amendment. Green, 474 U.S. at 69-70, 106 S.Ct. at 426 (citing Edelman, 451 U.S. at 666-69, 94 S.Ct. at 1357-59).
 
 
 28
 The Supreme Court has rejected the notion that an award of damages out of a state fund is constitutional when the fund has been segregated for a special purpose. In Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946), and Great N. Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944), taxpayers sued state officials attempting to recover taxes paid under protest where the money was segregated and held in trust pending determination of the taxpayers' rights. In both cases, the Court held that the suits effectively were against the state and, thus, barred by the Eleventh Amendment. Kennecott, 327 U.S. at 576-77, 66 S.Ct. at 746-47; Great N. Life, 322 U.S. at 53, 64 S.Ct. at 876. The Court observed that the statute at issue in Great Northern providing for the special segregation of tax funds was very similar to a statute involved in a case where the Eleventh Amendment was held to bar suit "except for the immaterial difference that the money collected is directed to be held separate and apart by the collector instead of being held in the general funds of the State Treasurer." Id. at 53, 64 S.Ct. at 876 (citing Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900)) (emphasis added).
 
 
 29
 The Fourth Circuit apparently thought it significant that the money paid into the state unemployment fund was separately financed by "employer contributions, federal funding, investment income, and other receipts," and that the state was insulated from liability for amounts exceeding the resources of the fund. See Brown, 660 F.2d at 1007. These also are features of the Colorado Unemployment Compensation Fund. But it seems illogical to base a state's immunity on whether it raises certain revenue by taxing its individual residents, employers, businesses, or products. Immunity should not depend on which aspect of the state's tax base it seeks to utilize. And the Supreme Court already has rejected the notion that a state waives its immunity merely by receiving federal assistance. See Edelman, 415 U.S. at 673, 94 S.Ct. at 1360-61.[6]
 
 
 30
 Finally, even if we could find little or no fiscal impact on the state from plaintiffs' suits, the financial impact on the state does not appear to be the predominant factor in Eleventh Amendment analysis. The Supreme Court instead focuses on the basic recognition that when money damages are awarded against the state, the state as an entity is being subjected to suit. As the Supreme Court has stated, a retroactive award of monetary relief
 
 
 31
 "will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action. It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials."
 
 
 32
 Id. at 668, 94 S.Ct. at 1358; see also Papasan v. Allain, 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986). Thus, no matter what fund a judgment for past damages comes from, it is still a damage award against the state. We hold that relief such as that claimed by the plaintiffs is barred by the Eleventh Amendment.
 
 
 33
 Although we have reasoned differently than the district court, we have reached the same conclusion. Because plaintiffs received no relief on the merits of their claims as a result of this suit, they are not prevailing parties within the meaning of 42 U.S.C. Sec. 1988 and are not entitled to attorney's fees. See Rhodes v. Stewart, --- U.S. ----, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (per curiam); Hewitt v. Helms, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). The order dismissing plaintiffs' action is AFFIRMED.
 
 
 
 [1]
 The brief for the United States was prepared by the Office of Immigration Litigation, Department of Justice. Curiously, the Department of Labor remains silent in this dispute
 
 
 [2]
 That provision provides as follows:
 "(7)(a) Benefits shall not be payable on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent residence at the time such services were performed, or was lawfully present for purposes of performing such services, or was permanently residing in the United States under color of law at the time such services were performed. For purposes of the 'Colorado Employment Security Act,' 'permanent resident under color of law' shall mean:
 (I) An alien admitted as a refugee under section 207 of the 'Immigration and Nationality Act', 8 U.S.C. Sec. 1157, in effect after March 31, 1980;
 (II) An alien granted asylum by the attorney general of the United States under section 208 of the 'Immigration and Nationality Act', 8 U.S.C. Sec. 1158;
 (III) An alien granted a parole into the United States for an indefinite period under section 212(d)(5)(B) of the 'Immigration and Nationality Act', 8 U.S.C. Sec. 1182(d)(5)(B);
 (IV) An alien granted the status as a conditional entrant refugee under section 203(a)(7) of the 'Immigration and Nationality Act', 8 U.S.C. Sec. 1153(a)(7), in effect prior to March 31, 1980;
 (V) An alien who entered the United States prior to June 30, 1948, and who is eligible for lawful permanent residence pursuant to section 249 of the 'Immigration and Nationality Act', 8 U.S.C. Sec. 1259; or
 (VI) An alien who has been formally granted deferred action or nonpriority status by the immigration and naturalization service."
 Colo.Rev.Stat. Sec. 8-73-107(7)(a).
 
 
 [3]
 We are uncertain whether plaintiffs seek relief for aliens not having work permits. At one place in the record plaintiffs' counsel stated that his clients "do not contend ... that [INS] employment authorization is required or needed to be found under color of law or to be eligible for unemployment benefits." IV R. 5. But counsel had earlier acknowledged that each plaintiff did have such authorization. Id. at 4. And from the record it appears the INS routinely grants work authorization to all of those who have a request for permanent status pending, and, under some plausible theory, are eligible for such status. Further, to be eligible for unemployment insurance benefits a claimant must be available for work, which for an alien means having valid authorization to work from the INS. See DOL Letter No. 1-86, supra, Sec. 4(a)(2)
 
 
 [4]
 These claims also might be moot if the aliens were permitted to have their claims reexamined by the state under the revised eligibility standards discussed above. CESA imposes a "good cause" limitation, however, on the reopening of claims not appealed within a certain time, see Colo.Rev.Stat. Sec. 8-74-106, and even were this not a bar to reexamination, it is unclear whether the Colorado courts and agencies would apply eligibility standards other than those that existed at the time the claims were filed. See Arteaga, 735 P.2d at 477 n. 7 (DOL Letter No. 1-86 would not be applied because it was not in effect at time claims arose). Thus, we do not regard these claims as moot
 
 
 [5]
 All defendants have been sued in their official capacities, which is the same as if the state itself had been sued. See Eastwood v. Department of Corrections, 846 F.2d 627, 632 (10th Cir.1988)
 
 
 [6]
 If Colorado did not participate in FUTA, it might fund its own program through general revenues. In such a case no argument could be made that an award of damages would be permitted by the Eleventh Amendment. The Fourth Circuit in effect holds that by mere participation in a federal program that mandates a special fund, the state has waived its Eleventh Amendment immunity