**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MOONGATE WATER CO., INC., a
New Mexico Public Utility,

      Plaintiff - Counter-
      Defendant - Appellee,

    v.

DONA ANA MUTUAL DOMESTIC
WATER CONSUMERS
ASSOCIATION,

      Defendant - Counter-
      Claimant - Appellant.

No. 04-2250

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CIV-02-1615 RB/LCS)**

---

Michael D. Davis, of Doyle Harris Davis & Haughey, Tulsa, Oklahoma (Steven
M. Harris, of Doyle Harris Davis & Haughey, Tulsa, Oklahoma, and Rachel
Brown, of Hubert & Hernandez, Las Cruces, New Mexico, with him on the
briefs), for Defendant - Counter-Claimant - Appellant.

William A. Walker, Jr., Las Cruces, New Mexico (Kyle W. Gesswein, Las Cruces,
New Mexico, with him on the brief), for Plaintiff - Counter-Defendant - Appellee.

---

Before **KELLY** , **BALDOCK** , and **HARTZ** , Circuit Judges.

---

**HARTZ** , Circuit Judge.

This appeal arises out of a dispute between two water-service providers over their rights to serve customers in an area northeast of Las Cruces, New Mexico, referred to by the parties as the Disputed Area. Moongate Water Company, Inc. is a public utility organized under the New Mexico Public Utilities Act, N.M. Stat. Ann. 1978, §§ 62-1-1 *et seq.* Doña Ana Mutual Domestic Water Association, a nonprofit association formed for the purpose of providing water services, is organized under the New Mexico Sanitary Projects Act, N.M. Stat. Ann. § 3-29-1 *et seq.* Moongate brought this action in the United States District Court for the District of New Mexico to obtain a declaratory judgment that 7 U.S.C. § 1926(b) does not protect Doña Ana from competition in the Disputed Area. Doña Ana now serves one customer in the area, whereas Moongate serves about 1,000 in several developments within the area.

The district court entered summary judgment for Moongate, concluding that because Doña Ana had not made service available to the Disputed Area, it was not entitled to § 1926(b) protection. Doña Ana appealed to this court. Doña Ana's principal argument has been that § 1926(b) protection cannot be decided on a geographic basis but only customer by customer, as customers seek specific service, so the question whether Doña Ana can acquire § 1926(b) protection in the future is not ripe for review.

The issues on appeal have been narrowed by the parties. At oral argument Moongate stated that it does not challenge Doña Ana's § 1926(b) protection with respect to Doña Ana's single present customer in the Disputed Area, and Doña Ana stated that it no longer claims any such protection with respect to Moongate's present customers in the area. The dispute before us thus relates solely to Doña Ana's claim to § 1926(b) protection with respect to future customers in the Disputed Area.

Our jurisdiction over this dispute, however, has been limited by litigation in another forum. As part of its effort to restrict competition from Doña Ana, Moongate not only pursued this action but also filed an action with the New Mexico Public Regulation Commission (PRC)[1] seeking even more extensive relief: a declaration that the Disputed Area has been part of Moongate's service area since 1984 and an order prohibiting Doña Ana from extending its facilities into the Disputed Area. (Doña Ana removed the PRC action to federal court, but the district court remanded it back to the PRC.) While this appeal was pending, the PRC ruled that under New Mexico law Doña Ana "does not currently have the legal right to serve the Disputed Area." *Moongate Water Co., Inc. v. Doña Ana Mut. Domestic Water Consumers Assoc.*, No. 03-00247-UT, Final Order at

---

[1]The PRC was formerly known as the Public Utility Commission. *See* NMSA 1978, § 8-8-21 (1998). For simplicity, we use *PRC* to refer to both.

7 (N.M.P.R.C. May 3, 2005) [hereinafter PRC Order]. The PRC declared that "Moongate has the right and duty to serve . . . all land in the Disputed Area . . . without interference from Doña Ana," *id.*, and it prohibited Doña Ana from further construction of facilities in the area, *id.* at 5-8. As a result of the PRC Order, we must divide the issue before us into two components: (1) whether Doña Ana presently has § 1926(b) rights with respect to future customers in the Disputed Area and (2) whether it can acquire such rights in the future when potential customers request service. We hold against Doña Ana on the first component. As for the second, the PRC Order renders it moot. We explain below that because of our holding on the first component, the PRC Order is not preempted by § 1926(b). Thus, there is no real and immediate likelihood of Doña Ana's serving future customers in the Disputed Area. Accordingly, there is not a sufficient controversy to support jurisdiction to hear a request for declaratory judgment regarding whether Doña Ana can acquire § 1926(b) protection with respect to future customers in the Disputed Area.

We affirm the district court judgment in part and remand the remainder of the judgment so that the district court can dismiss it as moot.

## I. BACKGROUND

In 1961 Congress amended the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921-2009n, to allow nonprofit water associations to borrow

-4-

federal funds for "the conservation, development, use, and control of water . . . primarily serving . . . rural residents." 7 U.S.C. § 1926(a)(1); *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 701 (10th Cir. 2004). To protect the investments of an indebted water association, the Act restricts other water utilities from competing with the association. *See* 7 U.S.C. § 1926(b)[2]. In *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192 (10th Cir. 1999), we held that "to receive the protection against competition provided by § 1926(b) a water association must (1) have a continuing indebtedness to the [federal government], and (2) have provided or made available service to the disputed area." *Id.* at 1197 (internal quotation marks and citations omitted). Essential to the second element is the indebted association's right under state law to serve the disputed area. *Id.* at 1201 n.8. "Without a right to provide service arising from state law, a water association would be unable to assert its entitlement to protection under § 1926(b) in the first instance because

---

[2]The provision states:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b).

the association would not legally have 'provided or made available' any service."
*Id.* (quoting 7 U.S.C. § 1926(b)).

The approximately 10-square-mile Disputed Area is northeast of Las Cruces, New Mexico, just east of Interstate 25 (I-25) and north of U.S. Highway 70. Every point in the Disputed Area is within half a mile of Moongate's existing pipes or facilities.

In 1983 some residents living within the Disputed Area desired water service. A Doña Ana County Commissioner approached Doña Ana about providing them service, but Doña Ana refused. After determining that the County Commission lacked legal authority to force Doña Ana to serve the area, the Commissioner asked Moongate, which served a nearby area, to provide water to the residents. Moongate responded by surveying the needs of the residents and then applying for and receiving approval from the PRC for a line extension. In March 1985 Moongate finished construction of the extension and began serving about 130 customers within the Disputed Area. A few years later Moongate acquired the Apollo Estates water system within the Disputed Area. By April 2004 Moongate's service to the Disputed Area had increased to nearly 1000 customers.

Doña Ana has long had facilities near or in the Disputed Area. It has a 10-inch main line on Del Rey Boulevard, which runs along the western edge of

-6-

the Disputed Area, just east of I-25. It also has two water-storage tanks located within the Disputed Area. But they are designed to serve Doña Ana's customers west of I-25. Most of the Disputed Area is above 4,000 feet, and water pressure for the system, which derives from the level of water in the storage tanks, cannot properly supply water to elevations above 4,000 feet.

Considerable evidence before the district court showed that Doña Ana has traditionally identified the eastern boundary of its service area as I-25. The current president of Doña Ana, however, testified that the association had planned to expand its service east of I-25 since at least 1996. Concrete action occurred in 2002 when Doña Ana reached an agreement with the former owners of Apollo Estates under which Doña Ana was to perfect water rights east of I-25. In November 2002 Doña Ana wrote a letter to Moongate stating, "[Y]ou are advised Doña Ana does intend to serve areas east of I-25, and has had an obligation to provide service to certain areas east of I-25 since its creation." R. Vol. I, Aplt. App. at 20. Doña Ana asserted that Moongate's right to serve the area east of I-25 through its acquisition of the Apollo Estates system was limited to only a fraction of the territory.

Moongate responded by initiating the present litigation on December 23, 2002. It sought a declaration that "the provisions of 7 U.S.C. § 1926(b) do not apply to Doña Ana regarding service by Moongate to persons either on their

system or in the area of their system." Aplt. App. at 17. Doña Ana counterclaimed, seeking a declaration that Moongate's sale of water within Doña Ana's service area violated § 1926(b), money damages from Moongate for violating § 1926(b), a permanent injunction restraining Moongate from providing service within Doña Ana's service area, an order compelling Moongate to transfer its customers to Doña Ana, and forfeiture of Moongate's lines to Doña Ana.

On June 20, 2003, Moongate filed a complaint with the PRC asking for a declaration that the Disputed Area is and has been a part of its service area since 1984; a finding that extension of Doña Ana's facilities into the Disputed Area would be unnecessarily duplicative, economically wasteful, and an unreasonable and unnecessary interference with Moongate's service of the area; and an order preventing Doña Ana from extending its lines into the Disputed Area.

Meanwhile, in 2003 Doña Ana began serving a single customer within the Disputed Area, an R.V. storage facility located on Del Rey Boulevard. In addition, it initiated plans to construct a one-million-gallon storage tank within the Disputed Area.

Moongate filed a motion for summary judgment in district court, seeking a declaration that "the provisions of § 1926(b) do not apply to Doña Ana with regard to service by Moongate to persons either presently on the Moongate system or elsewhere in the [D]isputed [A]rea . . . ." R. Vol. I, Aplt. App. at 196. Doña

Ana responded in kind, seeking a summary judgment "that it has § 1926(b) protection in relation to the 'Disputed Area' . . . [and] that because it has § 1926(b) protection for the 'Disputed Area', any action taken in the 'PRC Case' that will take away Doña Ana's legal right to serve or its ability to serve the 'Disputed Area', will be void and/or of no effect."  R. Vol. I, Aplt. App. at 101-02, 129-30.  In its supporting brief Doña Ana retreated from portions of its counterclaim, conceding that it was "not aware of any customer currently requesting water from Moongate to which Doña Ana asserts § 1926(b) protection."  *Id.* at 108.  As a result, it stated, "[t]he only question remaining in [this case] is whether Moongate can obtain a declaratory judgment that Doña Ana has no § 1926(b) protection to customers who *may* locate in the future within the . . . Disputed Area, and before those customers materialize and request water service."  *Id.* (internal quotation marks and parentheses omitted).  Doña Ana summarized its legal theory as follows:

> The question of whether Doña Ana is entitled to § 1926(b) protection for a given customer is determined on a customer by customer basis and is determined based upon the pipes in the ground test, i.e., at the time the specific customer requested water service, did Doña Ana have facilities within sufficient proximity from which water service could have been provided within a reasonable time.

*Id.*

Doña Ana submitted affidavits of two expert witnesses in district court who said that the association was generally capable of providing water service east of

I-25 as far back as 1985. They further stated, however, that they would need information concerning specific customer requirements before they could determine how long it would have taken Doña Ana to provide service.

The district court granted summary judgment for Moongate. It rejected the expert opinions that Doña Ana could have provided service to the Disputed Area within a reasonable time in 1985 on the grounds that they were conclusory and unsupported by facts, as well as being legally irrelevant. It held that whatever right Doña Ana had to provide service under New Mexico law, "Doña Ana has not made service available to the [D]isputed [A]rea within the meaning of § 1926(b) at any relevant time. Therefore, Doña Ana is not entitled to § 1926(b) protection with respect to the [D]isputed [A]rea." Dist. Ct. Order at 15, R. Vol. II, Aplt. App. at 458.

On appeal Doña Ana argues its entitlement to "§ 1926(b) protection as to [its] existing customer located within the Disputed Area and as to future customers who may later locate in the Disputed Area." Aplt. Br. at 6. The existing customer, however, is no longer at issue because at oral argument Moongate abandoned its challenge to Doña Ana's § 1926(b) protection with respect to that customer. Accordingly, our task is limited to resolving whether (1) Doña Ana now has § 1926(b) protection with respect to future customers in the Disputed Area or (2) can obtain such protection in the future.

-10-

As we shall discuss, however, the second issue (given our resolution of the first) has been mooted by the PRC decision. After oral argument in this appeal, the PRC issued its final order concluding that Doña Ana "does not currently have the legal right to serve the Disputed Area," and prohibiting Doña Ana from extending its facilities into the Disputed Area. PRC Order at 7.

## II. DISCUSSION

We first reject the proposition that Doña Ana presently possesses § 1926(b) rights with respect to future customers in the Disputed Area. We then declare moot the portion of the declaratory-judgment action relating to whether Doña Ana will be able to obtain § 1926(b) rights with respect to future customers in the Disputed Area.

### A. Present § 1926(b) rights of Doña Ana in Disputed Area

The parties have consistently disputed how one determines whether rights have accrued under § 1926(b). Moongate is not entitled to any protection under that statute because, unlike Doña Ana, it is not a qualifying nonprofit association with a continuing indebtedness to the federal government. It contends, however, that Doña Ana cannot obtain rights under § 1926(b) with respect to an area if Moongate preceded Doña Ana in establishing that it could provide service to the area. Moongate, noting its willingness to serve the Disputed Area and its maintenance of facilities within half a mile of every point in the area, concludes

-11-

that it beat Doña Ana to the punch, so Doña Ana cannot obtain any rights under § 1926(b) in the Disputed Area. Doña Ana, in contrast, argues that whether a utility has provided service must be decided customer by customer and depends on whether the association can respond within a reasonable time to a request by a potential customer seeking service, even if a competitor actually provided service in response to the request. It has therefore contended that Moongate's suit is premature and that the determination whether Doña Ana has exclusive rights to serve a customer under § 1926(b) must await a request for service and a finding whether Doña Ana could provide that service within a reasonable time.

We need not resolve this dispute because Doña Ana loses on its own theory. It states that "the only question [with respect to an association's § 1926(b) rights] should be whether at the time the customer requested service did the association have sufficient facilities from which to provide service within a reasonable time." Aplt. Br. at 39. This proposition might serve Doña Ana well with respect to its claim that in the future it may acquire § 1926(b) rights within the Disputed Area, but it is of no avail with respect to any claim by Doña Ana to present rights in the Disputed Area. Doña Ana does not assert before this court that any potential customer in the Disputed Area has requested service. As Doña Ana's briefs repeatedly emphasize, until a customer makes such a request, Doña Ana cannot establish that it could provide the desired service within a reasonable time. Thus,

-12-

Doña Ana cannot establish a vested § 1926(b) right under its own test. Although Doña Ana argues that it is entitled to a presumption that it can provide service, so that "the party opposing § 1926(b) protection must establish that there is no doubt after resolving all evidentiary uncertainties in favor of the association, that the association has not made service available to the customer in dispute," Aplt. Br. at 33, it does not explain (nor can we conceive) how this alleged presumption can assist it in the absence of a customer request. Rejecting the only argument proffered by Doña Ana, we must conclude that Doña Ana does not currently have an accrued § 1926(b) exclusive right to serve future customers in the Disputed Area.

## B. Future § 1926(b) Rights in Disputed Area

We now turn to possible future § 1926(b) rights of Doña Ana in the Disputed Area and conclude that the dispute over such rights is moot.

### 1. Mootness

"Under Article III of the Constitution, federal courts may only adjudicate live controversies." *Fischbach v. N.M. Activities Asso*c., 38 F.3d 1159, 1160 (10th Cir. 1994). The controversy "must exist at all stages of appellate or certiorari review, and not simply at the date the action is initiated." *Id.* (internal quotation marks and brackets omitted). Thus, "when intervening acts destroy a party's legally cognizable interest in the outcome of adjudication[,] . . . Article III

. . . deprive[s] the federal courts of jurisdiction over that party's claim." *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004).

The intervening judgment of another tribunal may be the cause of mootness. *See Esparza v. Valdez*, 862 F.2d 788, 791-92 (10th Cir. 1988) (claims mooted by state-court decision); *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 919 (5th Cir. 1996) (issue of § 1926(b) preemption mooted by state administrative decision agreeing that the rural water supplier "had the exclusive right to provide water service to the disputed areas"); 13A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3533.2, at 241 & n.28 (2d ed. 1984) ("If full relief is accorded by another tribunal, a proceeding seeking the same relief is moot . . . .").

It is well settled that mootness principles "govern[] cases brought . . . under the Declaratory Judgment Act." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 n.3 (10th Cir. 1994), *superseded by statute on other grounds as stated in Walker v. UPS Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001); *Esparza*, 862 F.2d at 791-92 (claims for prospective declaratory and injunctive relief mooted by Colorado Supreme Court decision). Otherwise, a declaratory judgment could be an improper advisory opinion. *Cox*, 43 F.3d at 1348. "[W]ith respect to declaratory relief, we look beyond the initial controversy which may have existed at one time and decide whether the facts alleged show that there is a substantial controversy

of sufficient *immediacy and reality* to warrant the issuance of a declaratory judgment." *Beattie v. United States*, 949 F.2d 1092, 1094 (10th Cir. 1991) (internal quotation marks, brackets, and ellipses omitted).

Although neither party raises mootness on appeal, we have "an affirmative obligation to consider this [jurisdictional] issue *sua sponte*." *Tandy*, 380 F.3d at 1290 n.15. We explored the matter with the parties at oral argument.

### 2. Application to this case

Moongate filed its complaint with the PRC under NMSA 1978, § 62-9-1.[3]

---

[3]N.M. Stat. Ann. 1978, § 62-9-1 provides:

A. No public utility shall begin the construction or operation of any public utility plant or system or of any extension of any plant or system without first obtaining from the commission a certificate that public convenience and necessity require or will require such construction or operation. This section does not require a public utility to secure a certificate for an extension within any municipality or district within which it lawfully commenced operations before June 13, 1941 or for an extension within or to territory already served by it, necessary in the ordinary course of its business, or for an extension into territory contiguous to that already occupied by it and that is not receiving similar service from another utility. If any public utility or mutual domestic water consumer association in constructing or extending its line, plant or system unreasonably interferes or is about to unreasonably interfere with the service or system of any other public utility or mutual domestic water consumer association rendering the same type of service, the commission, on complaint of the public utility or mutual domestic water consumer association claiming to be injuriously affected, may, upon and pursuant to the applicable procedure provided in Chapter 62, Article 10 NMSA 1978, and after giving due regard to public convenience

(continued...)

-15-

Relying on this statute, New Mexico caselaw, the PRC's line-extension rule, 17.5.440.10 N.M.A.C. (allowing a public utility to undertake certain line extensions without reporting to the PRC), and Moongate's certificate of convenience and necessity, the PRC determined that Moongate may "extend its existing infrastructure up to one-half mile without seeking or obtaining the [PRC's] approval so long as the extension will not invade another provider's territory." PRC Order at 7. Accordingly, the PRC concluded that "Moongate has the right and duty to serve all its existing customers and all land in the Disputed Area . . . without interference from Doña Ana." *Id.* Most importantly for our purposes, the PRC held that Doña Ana "does not currently have the legal right to serve the Disputed Area[,]" *id.,* and issued an order prohibiting Doña Ana from constructing the new storage tank and line extensions into the Disputed Area.

---

[3](...continued)
> and necessity, including reasonable service agreements between the utilities, make an order and prescribe just and reasonable terms and conditions in harmony with the Public Utility Act to provide for the construction, development and extension, without unnecessary duplication and economic waste.
>
> B. As used in this section, "mutual domestic water consumer association" means an association created and organized pursuant to the provisions of:
> . . .
>
> > (2) the Sanitary Projects Act.

As a result of the PRC decision, there is no point in deciding whether Doña Ana could acquire § 1926(b) protection in the Disputed Area in the future. Under state law Doña Ana is restricted from extending service to the Disputed Area, so it will have no occasion to invoke any right under the federal statute. "Where an indebted association has no legal right [under state law] to provide service, . . . it should not obtain protection from § 1926(b) for illegal provision of service." *Sequoyah*, 191 F.3d at 1201 n.8 (internal quotation marks omitted). Consequently, Moongate can no longer demonstrate "a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Beattie*, 949 F.2d at 1094 (internal quotation marks, ellipses, and emphasis omitted). So long as Doña Ana is prohibited by state law from extending its facilities into the Disputed Area, there is neither an immediate controversy over Doña Ana's § 1926(b) future rights nor a reasonable likelihood of one actually materializing. *See Esparza*, 862 F.2d at 791-93 (potential changes in agency interpretation insufficient to sustain controversy); *Enrico's Inc. v. Rice*, 730 F.2d 1250, 1255 (9th Cir. 1984) (same). No exception to the mootness doctrine is claimed, or appears to apply. *See Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002) (listing exceptions as cases in which "(1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily

-17-

ceased an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action." (internal quotation marks omitted)); *see also Esparza*, 862 F.2d at 793 (future changes in agency interpretation were "too speculative and remote to bring [a] case within any exception to the traditional mootness doctrine").

Doña Ana claims that it is not bound by the PRC Order. It argues that the PRC cannot terminate rights it previously acquired under §1926(b). In its supplementation under Fed. R. App. P. 28(j) it asserts that "once the association becomes indebted, the state has no power to take away the association's legal right to provide service to a given area or customer." But, as just discussed, Doña Ana has no accrued right to serve anyone in the Disputed Area (except for its conceded right to serve its single customer within the Disputed Area).

We addressed this issue in *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694 (10th Cir. 2004), which concerned the deannexation of a portion of the existing service territory of a qualified association. We held that "where the federal § 1926 protections *have attached*, § 1926 preempts local or state law that can be used to justify . . . encroachment upon [a] disputed area in which an indebted association is legally providing service under state law." *Id.* at 715 (emphasis added) (internal quotation marks and brackets omitted). In other words, a state or local government may not act "to *take away* from an indebted

rural water association any territory for which the association is entitled to invoke the protection of § 1926(b)." *Id.* at 716 (emphasis added).

Here, in contrast, there is no accrued right. Doña Ana has no vested § 1926(b) protection in the Disputed Area. Accordingly, the PRC Order is not preempted by § 1926(b) with respect to the Disputed Area.

## III. CONCLUSION

We AFFIRM the district court judgment to the extent that it holds that Doña Ana has no present § 1926(b) rights in the Disputed Area. We VACATE the remainder of the judgment and REMAND with instructions to dismiss it as moot.